## Richmond.

PETTYJOHN'S EX'OR AND ALS. v. WOODROOF'S EX'OR.

May 10th, 1883.

1. WILLS—*Construction—Limitation on failure of issue—Remaindermen—Case at bar.*—P., dying in 1822, by his will divides his estate between his six children and his grandson, W., giving each one-seventh, and providing that W.'s share should be under management of trustees, for his use until he shall reach twenty-one years of age, or marry, and that in case W. die leaving no issue of his body, his share and its increase shall go to testator's six children, or their representatives. W. never married, but reached twenty-one years of age, received his share, and died in 1875, without issue of his body, leaving a large estate.

HELD:

1. W. took a life estate in his share, remainder to P.'s children, or their representatives, contingent upon W.'s dying without issue of his body; W.'s estate is liable for all the property so received by him.

2. If any of said property remained in kind at his death, it passes in kind to remaindermen. If he had converted any, his estate is liable for its value, with interest from his death. But for such slaves as died or were emancipated in his possession, his estate is not liable. For the proceeds of such slaves as he may have sold, his estate is liable, notwithstanding their subsequent emancipation.

3. Remaindermen's claim is not barred by the statute of limitations. They had no cause of action until W.'s death. That occurred in 1875. Their suit was brought in 1877.

4. They had no vested right in the slaves or other property, until death of life tenant without issue; and before that event they cannot be held to have acquiesced in any act concerning same; and no charge of *laches* can attach to them.

5. The policy of the law concerning the speedy and absolute vesting of estates, has no application to this case. The terms of the will were within the policy of the law.

Appeal from decree of circuit court of city of Lynchburg rendered May 17th, 1879, in a suit wherein Jesse M. Pettyjohn and Joseph Pettyjohn, executors of Joseph Pettyjohn, deceased, Charles Pettyjohn, administrator of G. W. Pettyjohn, deceased, William H. Curle, administrator of William Pettyjohn, deceased, C. T. Hill, administrator of Wyatt Pettyjohn, deceased, and also of Elizabeth Wells, deceased, and Eliza C. Ridgeway, Rhoda Ridgeway, and Harriet Ridgeway, executrices of Mary or Polly Ridgeway, deceased, are complainants, and John W. Daniel, executor of Seth Woodroof, deceased, is defendant.

William Pettyjohn at his death, in 1822, left a widow, four sons, two daughters, and a grandson, then an infant. His estate consisted of land, slaves, perishable property, and money. His will was recorded in Amherst. By it he provided for his widow a life estate. Subject thereto, he bequeathed one-seventh of his estate to each of his children and one-seventh to his grandson. The fifth and sixth clauses of his will are as follows:

"Fifthly. It is my will and desire that in case any of my children should marry and die without leaving lawful issue, then the share of such child so dying without lawful issue shall revert back to my surviving children to be equally divided between them.

"Sixthly. It is my will and desire that the share of my estate hereby given to my grandson, Seth Woodroof, be continued under the direction and management of my executors as trustees to his use till he arrives at the age of twenty-one years, or marry, and in case he should die leaving no issue of his body, then his said share and its increase to be equally divided between my children, William, Wyatt, Joseph and George W. Pettyjohn, and my daughters, Polly Ridgeway and Elizabeth Wills, or their legal representatives."

Seth Woodroof never married. He died in Lynchburg the 4th of August, 1875, "leaving no issue of his body." He left a large estate, real and personal. From the executors Seth

Woodroof received $1,678 in money and thirteen slaves, which he sold for about $10,000.

The plaintiffs claimed that on the death of Seth Woodroof the contingency happened on which his share under the will passed to the testator's children; that with the contingency prescribed, he held a resulting trust for them, and when he converted some of the slaves into money and appropriated it to his own use, the remaindermen acquired the right to take the proceeds of the sale instead of the slaves. At the hearing the circuit court decreed that Seth Woodroof, upon attaining the age of twenty-one years, became entitled to his share of the estate of William Pettyjohn, deceased, absolutely, without any restriction or limitation; and if this was not so, the contingent remaindermen would be entitled to so much only of the property bequeathed to Seth Woodroof as remained in kind at his death, and that the plaintiffs' bill be dismissed and that they pay to the defendant his costs.

From this decree the plaintiffs obtained an appeal from one of the judges of this court.

The positions taken by the defendant are set out in the court's opinion.

*Edward S. Brown,* for the appellants.

The court erred:

First. In holding that, on Seth Woodroof's attaining the age of twenty-one years, his title to his share of the estate of William Pettyjohn, deceased, became absolute—without any restriction or limitation.

Second. In holding that, if the first proposition were not true, the children of the testator would be entitled, only, to such property in Seth Woodroof's share, as remained in kind at his death.

Third. In not ruling that this suit is not barred by limitations.

Fourth. In dismissing the bill, and decreeing that the plaintiffs pay the costs.

First. The attaining of the age of twenty-one years, did not make the title of Seth Woodroof to his share of the estate of William Pettyjohn, deceased, absolute.

In the sixth clause, the testator manifests two leading purposes—one, as to the custody of the share of his grandson during his minority, or till his marriage, and the other, as to the disposition of his share, if he should die leaving no issue. As to its custody, he says: "It is my will and desire, that the share of my estate hereby given to my grandson, Seth Woodroof, *be continued under the direction and management of my executors, as trustees to his use, till he arrives at the age of twenty-one years, or marry.*"

This clause marks the duration of the trusteeship—nothing more.

In expressing his other purpose, the testator says: "*And in case he should die leaving no issue of his body, then his said share and its increase to be equally divided between my children.*" The only period here mentioned, is the time when Seth Woodroof shall die, and the contingency is, his dying leaving no issue. No matter when his death might occur, the simple question would be, did he die leaving no issue? If so, then the contingency happened on which his share was limited to the testator's children. This construction is much strengthened by referring to the fifth clause—"in case any of my children should marry and die, without leaving lawful issue, then the share of such child, so dying without lawful issue, shall revert back to my surviving children." Here, the testator manifests the general intention to keep his estate in the hands of his children, and the dying " without leaving lawful issue" is not confined to any particular period, but extends over the whole life of each child. If we read the sixth clause, in the light of the general intention manifested in the fifth, we see the same limitation as to the share of his grandson, which he prescribed

as to the shares of his children, running through the whole life of his grandson, as it did through the whole life of each child.

Second. When Seth Woodroof died leaving no issue, the children of the testator became entitled to the same amount of money that he received from the executors, and to the same amount of money that he received on the sale of the slaves.

In *Hyde* v. *Parrat,* 2 Vernon, 331, the court said: "Where personal chattels are devised for a limited time, it shall be intended the use of them only, and not the devise of the thing itself." Fearne on Remainders, 414.

In *Forest* v. *Elwes,* 4 Ves. Jr. 492, a trustee without authority sold stock. The court said: "The *cestui que trust* has an option to have either the stock or the money produced by it, with interest." *Pocock* v. *Reddington,* 5 Ves. Jr. 794; *Bate* v. *Scales,* 12 Ves., Jr., 402; *Docker* v. *Somes,* 2 Mylne & Rem. 655.

In *Tabb* v *Cabell,* 17 Gratt. 160, Landen Cabell, the testator, bequeathed several slaves to his widow for life, remainder to his chilen. She sold one of the slaves. The court said: "In the view of a court of equity, Mrs. Cabell, as tenant for life of the slaves bequeathed to her for life, remainder to her children, was regarded as a trustee. The sale of Lucinda was a breach of trust, if the remaindermen did not consent to it; and upon the well settled principles of equity, the parties entitled in remainder after her death had a right, as *cestui que trust,* at their option, if nothing more had happened than the sale of Lucinda, to assert their claim to her, in the hands of the purchaser, or to hold Mrs. Cabell responsible to them for her value."

In *Brown* v. *Lambert,* 33 Gratt. 264, under a deed executed in 1828, Edmondson and wife had a life interest in a number of slaves, with remainder to their children and the descendants of such of their children as should die during their lives. Edmondson sold several of the slaves. He died in 1872, and his wife in 1874. The remaindermen sued to recover the proceeds of the sale of the slaves sold by the life tenant. For the defence it was contended that the right of property in slaves was de-

stroyed by their emancipation, before the termination of the life estate and before the rights of the remaindermen vested, and that the remaindermen could not have been damaged by the sale.

Judge Burks, delivering the opinion of the court, said, "that where a trustee commits a breach of trust, by a sale of the trust subject without authority, the *cestui que trust* (beneficiary) may, at his option, disaffirm the sale, and pursue the property in the hands of a volunteer, or a purchaser for value with notice of the trust, or he may affirm the sale, and resort to the proceeds in the hands of the trustee." And he said, "the sale by him (Edmondson) was of the absolute estate in the slaves. This is shown by the prices obtained and other circumstances. It was, therefore, a palpable breach of trust, and, upon the principles already enunciated, he was accountable therefor to the remaindermen, who stood in relation to him as *cestui que trust.*" And, also, "we are, therefore, of opinion, that the claim of the appellants is not affected by the general emancipation of slaves which occurred as one of the results of the war."

Third. This suit is not barred by the statute of limitations.

The defendant pleaded to the bill as follows: "And for plea says, that the cause of action therein alleged was barred by the statute of limitations for many years before the institution of this suit, and said defendant relies on this defence and plea as to all matters in said bill contained."

In *Wilson* v. *Buchanan,* 7 Gratt. 344, the court said: "A slave is given to one for life, with remainder to another. No possession of the third person, during the life of the tenant for life, no matter how long or how adverse, will bar the action of the remainderman; and for this reason, that the remainderman had no cause of action until the death of the tenant for life."

In *Ball* v. *Johnson,* 8 Gratt. 281, it was held, that "the statute of limitations does not commence to run against the owners of the remainder in slaves, in favor of the purchaser of the life estate, until the death of the life tenant."

In *Layne* v *Norris,* 16 Gratt. 236, the decision is given in the syllabus as follows: "A life tenant of a slave sells her life interest and dies. The purchaser continuing to hold the slave does not hold under, but adversely to the remainderman, and the statute commences to run on the death of the life tenant."

See also *Kenny* v. *Kenny,* 25 Gratt. 293, and *Cross* v. *Cross,* 4 Gratt. 258.

*John W. Daniel,* for the appellee.

LACY, J., delivered the opinion of the court.

William Pettyjohn died in 1822, and his will was proved and recorded in Amherst county, in the same year. The testator, after providing for his widow, divided his estate equally between his six children surviving him, and his grandson, Seth Woodroof, an infant son of a deceased daughter—that is, one-seventh to each. As to the shares of his surviving children, he provided that if any of the children should die without leaving lawful issue, then the share of such child so dying should revert back to the surviving children of the testator. And as to his infant grandson, above named, he provided that his share should be continued under the direction and management of his executors, as trustees, to his use until he should attain the age of twenty-one years, or marry—and then provided as to his share as he had provided with reference to the shares of his, the testator's, six children, that in case the said grandchild should die, leaving no issue of his body, then his share and its increase to be equally divided among his six children above mentioned, who survived him, or their legal representatives.

The grandchild aforesaid grew to full age, received his share of the estate from the executors, and died unmarried and without issue of his body, and left a large estate, real and personal. His death occurred in the city of Lynchburg, in the year 1875, and the appellee qualified as his executor. Whereupon the

appellants, who are the legal representatives of the said six children of the said testator, William Pettyjohn, deceased, filed their bill in the said circuit court of Lynchburg, against the personal representative of said Seth Woodroof, who is the appellee here, claiming that the estate of Seth Woodroof was liable to them under the will of the said William Pettyjohn, for such estate as Seth Woodroof had received from his grandfather's estate; claiming that on the death of said Seth Woodroof, the contingency happened on which the share he took passed to the children of the testator, William Pettyjohn; that with the contingency prescribed, he held a resulting trust for them, and when he converted some of the slaves into money, and appropriated it to his own use, the remaindermen acquired the right to take the proceeds of the sales instead of the slaves themselves. On the 17th day of May, 1879, the circuit court decided that "Woodroof, upon attaining the age of twenty-one years, became entitled to his share of the estate of William Pettyjohn, absolutely, without any restriction or limitation, and that if this was not so, the remaindermen would be entitled to so much only of the property bequeathed to Seth Woodroof as remained in kind at his death," and dismissed the bill of the plaintiffs.

It was error to decree that Seth Woodroof took under the will of his grandfather his share of the estate in absolute property, because the will directed that if he died without issue of his body the property should pass to testator's six children; and Seth Woodroof did die without issue of his body, so his share which he held for life passed to the said six children of testator under the said will. His attaining twenty-one years of age was the contingency upon the happening of which the executors were to deliver the property to him, before that time to be held for his use, and after that time to be held by him for life only, if he should die without issue of his body; and as he did die without issue of his body, the share bequeathed to him passed to the six children of the testator, or their legal representatives,

and the appellants, who are their legal representatives, are entitled under the will to demand and receive it.

The estate of Seth Woodroof, the grandson, was limited in exactly the same way that the share of each child was limited, and it is difficult to account for the strange error into which the court went. The provisions of the will are perfectly plain and unambiguous.

The circuit court erred in holding, moreover, that if the remaindermen took the estate of the said life tenant at all, they only took such as remained in kind at the death of the life tenant. Such a ruling would absolutely destroy in most, or certainly very many cases, the entire interest of the remaindermen, and also defeat the provisions of the will as to the life tenant. If the estate consisted of money, as this in part did, the life tenant could make no use of it if he kept it in kind; and if he invested it, the remaindermen would make nothing because it did not remain in kind. The decree of the circuit court is equally erroneous as to the slave property. If the life tenant kept anything he received in kind until his death without issue of his body, then it passed in kind; but if he converted any of the estate to his own use, then his estate at his death is liable for the value of the property so converted at his death without issue—that is, his personal representative is liable to the remaindermen or their legal representatives, the appellants, for the sum he sold the slaves for, with interest only from the date of his death. See *Tabb* v. *Cabell*, 17 Gratt. 160; Fearne on Remainders, 414; *Martin* v. *Green*, 1 Georgia Decisions, 109; *Brown* v. *Lambert*, 33 Gratt. 364. In this last case the court said: "Where a trustee commits a breach of trust by a sale of the trust subject without authority, the *cestui que trust* may at his option disaffirm the sale and pursue the property in the hands of a volunteer or a purchaser for value with notice of the trust, or he may affirm the sale and resort to the proceeds in the hands of the trustee." This was a case like the one in hand—of the sale of a slave by the life tenant and a suit to recover the

value of the slave after emancipation.    See also *Oliver* v. *Piatt,* 2 Howard, 333–401.

The case of *Moorman* v. *Smoot,* 28 Gratt., is a similar case. This court there held the remaindermen entitled to recover the value of the slaves notwithstanding their subsequent emancipation.

See also *Kenny* v. *Kenny,* 25 Gratt., and *Cross* v. *Cross,* 4 Gratt. The appellee seeks to defend the claim of appellants upon the ground of the statute of limitations. This defence is equally without avail to the appellee. The appellants had no cause of action until the death of the life tenant without issue; that occurred in 1875, and appellants filed their bill in 1877. In less than two years after the right of action accrued the suit was brought, and so the claim of the appellants is not barred by the statute of limitations.

The appellants had no right in the slaves or other property until the death of life tenant without issue. Before the happening of that contingency they cannot be held to have acquiesced in any act concerning the same, and no charge of *laches,* for like reason, can attach to them. Since their right of action accrued, they have been prompt and diligent in the assertion of their claims.

The policy of the law concerning the speedy and absolute vesting of estates, has no application to this case. The terms of the will were within the policy of the law, and there is no aid for the appellees in that defence.

Upon the whole case, we are of opinion that the decree of the circuit court aforesaid should be reversed and annulled. And the cause must be remanded to the circuit court of Lynchburg for further proceedings to be had therein, in accordance with the foregoing views, and an account to be taken of the amount of the share received by Seth Woodroof, deceased, of his grandfather's estate, with interest from the date of the death of said Woodroof. Such slaves as died, or were emancipated, constitute no charge on his estate, if he had not converted them to

his use. But his estate should be held liable for such money as he so received, and for the value of such slaves or other property as he converted during the pendency of his life tenancy.

*Lewis, P.,* and *Richardson, J.,* dissented.

The decree is as follows:

This day came again the parties by their counsel, and the court having maturely considered the transcript of the record of the decree aforesaid, and the arguments of counsel, is of opinion for reasons stated in writing and filed with the record, that the plaintiffs are entitled under the will of William Pettyjohn, deceased, to the share of Seth Woodroof under the said will, and that the decree aforesaid is absolutely erroneous. Instead of said decree, the said circuit court should have entered a decree directing an account of the legacy received by Seth Woodroof under the will of William Pettyjohn, deceased, of the sale by him of slaves embraced in said legacy and the proceeds thereof, and should have decreed the payment of the amount so ascertained by the defendant to the plaintiffs, and ordering the payment by the defendant to the plaintiffs of their costs by them expended in the prosecution of their claims in this cause in the said circuit court.

It is therefore decreed and ordered that the said decree be reversed and annulled, and that the appellee pay to the appellants their costs by them about the prosecution of the appeal aforesaid here expended.

And this cause is remanded to the said circuit court of Lynchburg for further proceedings to be had therein in order to a final decree in the cause in conformity with the opinion and principles herein expressed and declared; which is ordered to be certified to the said circuit court.

DECREE REVERSED.