# Richmond.

COMMONWEALTH V. VIRGINIA BANK AND TRUST CO.

January 13, 1910.

Absent, Buchanan, J.

1. BANKS—*Taxation—Value of Shares—Deductions—Assessed Value of Real Estate.*—In ascertaining the value of the shares of bank stock for taxation under Acts 1908, p. 325, the value of the real estate otherwise taxed, which is to be deducted from the aggregate of the bank's capital, surplus and undivided profits, is the *assessed* value of such real estate, and not its *actual* value. Any other construction would render the act of doubtful constitutionality under the provisions of section 182 of the Constitution.

Error to a judgment of the Corporation Court of the city of Norfolk on a petition to correct an erroneous assessment. Judgment for the petitioner. Commonwealth assigns error.

*Reversed.*

The opinion states the case.

*Wm. A. Anderson, Attorney General,* for the Commonwealth.

*Loyall, Taylor & White,* for the defendant in error.

Counsel for the defendant in error presented the following argument:

The single question presented in this case is whether, in assessing the stock of a bank for taxation, the *actual* value or the *assessed* value of its real estate is to be deducted from the aggregate of its capital, surplus, and undivided profits.

The facts in this case are as follows:

The capital of the Virginia Bank and Trust Company, Incorporated, on the first day of February, 1909, was $600,000.00,

the surplus was $90,000.00, and the undivided profits were $15,541.72; making a total of $705,541.72.

Included in the capital, surplus and undivided profits was the cost of the land and the banking building thereon, amounting to $138,133.65, and this was the actual value thereof. In other words, in making up its capital, surplus and undivided profits to the sum of $705,541.72, its real estate, consisting of its bank building and the land on which it is situated, was placed at its value of $138,133.65.

This real estate was assessed at $60,000.00.

The contention of the Commonwealth is that $60,000.00, the assessed value of said real estate, only, should be deducted from the total of its capital, surplus and undivided profits of $705,-541.72.

While the contention of the bank is that the actual value of said real estate, the value at which it was included in the capital, surplus and undivided profits, viz.: $138,133.65, should be deducted therefrom.

By the acts of 1902-3-4, page 163, it is provided as follows:

"From the total market value of the shares of stock of any such bank, . . . there shall be deducted the *assessed value* of its real estate otherwise taxed in this State, and the value of each share of stock shall be its proportion of the remainder: provided, that the market value of said stock shall be estimated at a sum not less than the aggregate of the capital, surplus and undivided profits of each bank, . . . as shown by its last published statement prior to the first of February of each year, after deducting from such aggregate the value of its real estate otherwise taxed in this State."

By the acts of 1908, page 325, it is provided as follows: "From the total value of the shares of stock of any such bank . . . which shall be ascertained by adding together its capital, surplus and undivided profits, there shall be deducted *the value* of its real estate otherwise taxed in this State, and the actual value of each share of stock shall be its proportion of the remainder."

It is perfectly clear that the object of the amendment was two-fold: First, to fix the value of the stock, not by an estimate of what might be its market value, but by adding the capital, surplus and undivided profits; and, second, to allow a deduction from the aggregate, so ascertained, not of the assessed value of the real estate, but of the actual value thereof.

The legislature, in eliminating the word "assessed," must have meant that, in place of deducting the assessed value of the land as had theretofore been the rule because of the use of the word "assessed" in the previous act, the actual value of the land was to be deducted. No other conclusion can be drawn from the change in the act.

If this were the intention of the legislature, and certainly it should be so construed, the court is, of course, bound thereby, even if it were not reasonable. But that it is reasonable and fair is evident at once upon a consideration of the situation.

Where the bank owns real estate, the stock represents two forms of property: real property and personal property. The real property is assessed in the same way as the real property of individuals and other corporations, and when taxes have been paid on such assessed value, the stock, to the extent to which it represents real property, has borne its part of the burden of taxation. It is only fair, then, that the stock should be taxed, in addition, only to the extent to which it represents personal property. This is determined, of course, by deducting the actual value of the real estate from the total actual value of the assets, real and personal, and not by deducting merely the *assessed* value of the real estate.

As a concrete illustration, take the case at bar; the total value of the stock, taking personal and real property together, is $705,000 in round figures. Of this value, $138,000 in round figures represents real assets already taxed. In other words, 138-705ths of the property represented by the stock has already been taxed and the 567-705ths remaining only should yet be taxed, but as proposed by the Auditor of Public Accounts, in-

stead of taxing the remaining 567-705ths of the total, he proposes to deduct only $60,000, the assessed value of the real estate, and to tax 645-705ths, in which case more than the whole would be taxed, which would be clearly unjust and unfair.

It is evident from the express terms of the act that taxation on the stock of a bank is in lieu of, and not in addition to, a tax on its capital.   It is further manifest that the tax is placed on the stock and not on the capital, because the capital of the national banks cannot be taxed·by the State, while the stock can be.   *Owensboro National Bank* v. *Owensboro,* 173 U. S. 668.

The object, then, of taxing the stock of banks, and not the capital, was to compel the national banks to bear their portion of the burden of taxation as well as the State banks.   The object was not to impose a larger burden by taxing the stock than would result from taxing the capital.

If a State bank were taxed upon its capital and it owned real estate as a part of that capital, it would pay, in addition to the tax on the assessed value of its real estate, only on the value of its personal property.   In the case at bar the Virginia Bank and Trust Company owns notes, bonds and securities of the value of $567,408.07 and owns real estate of the value of $138,133.65.   If it pays the taxes on the assessed value of its real estate and taxes on the value of its personal property, it has borne its portion of equal and uniform taxation.

If, on the other hand, it pays taxes on the value of its personal property, on the assessed value of its real estate, and also on the difference between the assessed value of its real estate and its actual value, it is evident at once that it has paid more taxes on its real estate than the owners of other real estate, who only· pay on the assessed value.

We don't mean to say that the legislature could not tax the capital and also tax the stock at its market value.   It could. But what we do mean to say is this: where the legislature has

placed a tax on stock, in lieu of a tax on capital, it was reasonable, fair and equitable that it should allow the actual value of the real estate, otherwise assessed and taxed, to be deducted from the total assets, real and personal, in determining the value of the stock for taxation.

We repeat, therefore, that the legislature, in changing the language of the act in 1908, must have meant that the actual value of the real estate, and not merely its assessed value, was to be deducted from the actual value of the real estate and personal property called capital, surplus and undivided profits, and that such a change was in harmony with the principle of equal and uniform taxation.

It is stated in the petition for a writ of error that the construction contended for by the Commonwealth has been accepted and followed by every bank in the State except the defendant in error.

We hardly think this is an accurate statement. It may be that all the other banks owning real estate have not protested against the deduction of the assessed value thereof made by the commissioner of the revenue, but this hardly justifies the conclusion that such banks have accepted and followed the construction of the law contended for by the Commonwealth. The failure to protest may be due to several causes:

1. Many banks own no real estate and are not affected by the law.

2. Many of the banks may not have been aware of the amendment to the law, which was not effective until the assessment of 1909.

3. And even where banks own real estate, if such real estate is placed in their statements, in making up the capital, surplus and undivided profits, at an amount that is not greater than the assessed value of said real estate, such banks are not interested in the point raised in these proceedings. For instance, take a bank which bought its banking site many years ago in Norfolk

and placed the value of said real estate in its statements at the cost at the time it was purchased. That real estate has since vastly increased in value, but the bank has not, in making up its capital, surplus and undivided profits, increased the valuation of the real estate in such statement. The assessment, however, has been increased from time to time, and is now equal to, or in excess of, the value at which the real estate is placed in the banking statement. We know of many banks to which this illustration is applicable. It is evident that such a bank would not be benefited by an appeal to the principle involved in this case. It could not deduct, as representing its real estate, a greater value from the aggregate of its capital, surplus and un-divided profits than the amount at which it placed its real estate in such statement.

The true and fair principle is evident at once. A bank should be allowed to deduct, before its stock is assessed, the value at which its real estate has been included in making up the aggregate of its capital, surplus and undivided profits. The value thus deducted represents real estate which is otherwise taxed.

### Value of Real Estate Otherwise Taxed.

The argument in the petition for a writ of error seems to be based mainly on the idea that the words "otherwise taxed" in the clause "value of the real estate otherwise taxed in this State" refers to and modifies the word "value," and not the words "real estate." We respectfully submit that such a contention cannot be upheld. The proper, logical and grammatical construction of that clause must be that the expression "otherwise taxed" has reference to the real estate and not to the value of the real estate. Values are not taxed—property is taxed, and such property is assessed in accordance with its value—but values are not taxed.

### Constitutional Provision.

In the petition for a writ of error the further argument is made that section 182 of the Constitution controls this case. This section reads as follows:

"Until otherwise prescribed by law the shares of stock issued by trust or security companies chartered by this State, and by incorporated banks, shall be taxed in the same manner in which the shares of stock issued by incorporated banks were taxed by the law in force January 1, 1902; but from the total assessed value of the shares of stock of any such company or bank there shall be deducted the assessed value of its real estate otherwise taxed in this State, and the value of each share of stock shall be its proportion of the remainder."

It is perfectly evident that the Constitution merely fixed the method of taxing bank stock "until otherwise prescribed by law." In other words, the Constitution simply legislated upon the method of taxing bank stock until a change should be made in that method by the legislature. That change has now been made and the constitutional provision has no application.

Constitutions are construed strictly and inhibitions on the powers of the legislature are not extended beyond what is clearly required by the language of the Constitution.

It would be rather remarkable to say that a constitutional provision, consisting of one sentence, which begins with the words "until otherwise prescribed by law," controls and prohibits what may afterwards be "prescribed by law."

KEITH, P., delivered the opinion of the court.

The Virginia Bank and Trust Company presented its petition to the Corporation Court of the city of Norfolk, in which it shows, that on February 1, 1909, the capital stock of the bank was $600,000, the surplus $90,000, and the undivided profits $15,541.72, making the total of the capital,

surplus and undivided profits $705,541.72; that the bank was at that time and still is the owner of a lot of land with the bank building thereon, in the city of Norfolk; that the lot and building had cost the bank the sum of $138,133.65, which sum represents the true value of said property on February 1, 1909, and that this building was placed in the assets of the bank at the figure $138,133.65 in making up the total of its capital, surplus and undivided profits of $705,541.72; that the commissioner of the revenue of the city of Norfolk, instead of deducting from the total of the capital, surplus and undivided profits the value of said real estate, namely, $138,133.65, in order to determine the value of the shares of stock of said bank for taxation, deducted from the total of the capital, surplus and undivided profits $60,000, being the value at which said real estate was assessed for the purpose of taxation, the result of which was that the stock of the bank was assessed for the year 1909 at $642,000, when it should have been assessed at only $567,408; and that in consequence of said erroneous assessment made by the commissioner of the revenue the bank has paid to the State of Virginia, and is entitled to have refunded to it by reason of said erroneous assessment, the sum of $260.72. The petitioner, therefore, prays the court to correct said erroneous assessment and direct the repayment to petitioner of the sum of $260.72, in accordance with the facts as above set forth.

The corporation court granted the prayer of the petitioner held that it had been erroneously charged with the sum of $260.72, and directed that that sum should be refunded to it. Upon the petition of Morton Marye, Auditor of Public Accounts, a writ of error was awarded to that judgment.

The Acts of 1908, p. 325, provide that the value of the shares of stock of the defendant in error and other like corporations shall be ascertained by adding together its capital, surplus, and undivided profits, and that the actual value of each share of stock shall be its proportion of the aggregate amount. There can be no doubt that in this respect the law was complied with.

The controversy arises over the amount to be deducted, the statute saying, "there shall be deducted the value of its real estate otherwise taxed in this State"; the contention upon the part of the Commonwealth being that this phrase has reference to the value at which the real estate is assessed for taxation, which in this case is $60,000, while the defendant in error contends that the word "value" refers to the actual value of the real estate otherwise taxed, and that there should be deducted from the aggregate of the capital, surplus and undivided profits the sum of $138,133.65, which is the actual value of the real estate.

In the Acts of 1902-3-4, p. 163, it is provided that "From the total market value of the shares of stock of any such bank . . . there shall be deducted the assessed value of its real estate otherwise taxed in this State, and the value of each share of stock shall be its proportion of the remainder; provided, that the market value of said stock shall be estimated at a sum not less than the aggregate of the capital, surplus, and undivided profits of each such bank . . . as shown by its last published statement prior to the first of February of each year, after deducting from such aggregate the value of its real estate otherwise taxed in this State."

That section was amended by the Acts of 1908, p. 325, so as to read as follows: "From the total value of the shares of stock of any such bank . . . which shall be ascertained by adding together its capital, surplus, and undivided profits, there shall be deducted the value of its real estate otherwise taxed in this State, and the actual value of each share of stock shall be its proportion of the remainder."

It will be observed that the first act is amended in two particulars: In the first act the *market value* of the shares of stock are the subject of taxation, with a proviso that the market value shall be estimated at a sum not less than the aggregate of the capital, surplus and undivided profits of such bank, as shown by its last published statement prior to the first of February of each year, after deducting from such aggregate the value of its

real estate otherwise taxed in this State; while in the act of 1908 the market value is not referred to, but the statute fixes its own method of ascertaining the value for taxation of the shares of stock in such institutions, and then provides that there shall be deducted *the value* of its real estate otherwise taxed in this State. The second act is not as explicit as the first, which leaves no room to doubt that the sum to be deducted is the *assessed* value of the real estate, for it is expressly declared that "from the total market value of the shares of stock of any such bank . . . there shall be deducted the assessed value of its real estate"; but it will be observed that at the conclusion of the proviso in the former act, in declaring what sum shall be taken from the aggregate of the capital, surplus and undivided profits, the phrase is used "after deducting from such aggregate the *value* of its real estate otherwise taxed in this State." It cannot be supposed that the legislature intended to deduct the *assessed* value of the real estate from the market value of the shares of stock where the market value was the subject of taxation in the first clause, and deduct a different amount, to-wit, the actual value, in the event the value of the stock for taxation should come to be estimated in accordance with the terms of the proviso or concluding clause of the section.

Defendant in error contends that the words "otherwise taxed" in the statute have reference to the real estate, and not to the value of the real estate. We think they refer to and modify the entire phrase, "the value of its real estate otherwise taxed in this State," for it is values and not real estate which after all is the subject of taxation.

We are also of opinion that the provision of the Constitution—section 182—has a decided bearing upon the subject. It reads as follows: "Until otherwise prescribed by law, the shares of stock issued by trust or security companies chartered by this State, and by incorporated banks, shall be taxed in the same manner in which the shares of stock issued by incorporated banks were taxed by the law in force January 1, 1902; but from the

total assessed value of the shares of stock of any such company or bank there shall be deducted the assessed value of its real estate otherwise taxed in this State, and the value of each share of stock shall be its proportion of the remainder."

The first branch of this section, which provides that the law then in existence shall continue in force until otherwise prescribed by law, implies the power in the legislature to change the law. But it is also plain that the concluding clause of that section prescribes a limitation upon the power of the legislature with respect to the subject, and in effect declares that however the law may be altered and amended, whatever changes the legislature may see fit to prescribe, it shall always be provided that from the total assessed value of the shares of stock of any such company or bank there shall be deducted the *assessed* value of its real estate otherwise taxed in this State, and the value of each share of stock shall be its proportion of the remainder.

We reach the conclusion that, in addition to what we have already said, and in view of the terms of section 182 of the Constitution, the construction contended for by defendant in error would render the act of doubtful constitutionality; and upon the whole case we are of opinion that the judgment of the corporation court should be reversed.

*Reversed.*