# Richmond.

DANIEL AND OTHERS v. LIPSCOMB AND OTHERS.

January 13, 1910.

Absent, Buchanan, J.

1. WILLS—*Child—Descendants—Defeasible Fee—Case in Judgment.*—A testatrix bequeathed property to her two grandsons, A and B, to be equally divided between them, "and if either of my grandsons' should die leaving no child or descendants surviving him, the share he receives under this will is to go to his surviving brother, and if both of my grandsons die, leaving no child or descendants surviving them, then the whole of what is herein given shall be equally divided between" my children. A died without issue. B is still living and has living children.

   *Held:* The words "child" and "descendants," in the connection here used, are not words of purchase, creating an estate in the class designated, but are words of limitation, which serve to limit or describe the estate given. A and B each took defeasible fees. Upon the death of A without issue, the estate given to him passed to B, subject to the same condition. In no event can the children of B take anything under the will of the testatrix. If they survive their father his defeasible fee is converted into a fee simple, which, if undisposed of, they will take by *inheritance from their father,* but *not by purchaser under the will of the testatrix.* If, however, B is not survived by any child or descendant, the estate will pass under the ulterior limitation to the children of the testatrix. *Pettyjohn* v. *Woodruff,* 77 Va. 507, criticised.

2. WILLS—*"Dying Without Heirs"—Code, sec. 2422—Perpetuities.*—The purpose of the statute (Code, sec. 2422) construing the phrase "dying without heirs" and similar expressions is to effectuate the intention of the testator by rendering valid a limitation which would have been otherwise invalid as violative of the rule against perpetuities. Since January 1, 1820, words which had previously been construed to mean an indefinite failure of issue are now construed to mean a *definite* failure of issue, and the limitations founded thereon are no longer void for remoteness.

Error from a decree of the Circuit Court of Cumberland county. Decree for defendants. Complainants appeal.

*Affirmed.*

The opinion states the case.

*Scott, Buchanan & Cardwell, E. W. Hubard* and *William Lancaster,* for the appellants.

*A. B. Armstrong, A. S. Hester, J. Taylor Thompson* and *Richard B. Davis,* for the appellees.

WHITTLE, J., delivered the opinion of the court.

The object of this suit is to construe certain clauses in the wills of Elizabeth W. Spencer and George W. Daniel, and to set up a remainder, by way of executory limitation, in the children of William Daniel in an undivided moiety of two tracts of land situated in Cumberland county, Virginia, known as the "Gibson" and "Springfield" tracts.

The circuit court held that the children of William Daniel took no interest in the moiety of the lands devised to John S. Daniel by the will of his father, George W. Daniel, construed either alone or read in connection with the will of Elizabeth W. Spencer, which is referred to and made a part of George W. Daniel's will, and dismissed the bill on demurrer. From that decree this appeal was allowed.

Mrs. Spencer's will bears date June 6, 1850, and directs that the money arising from the sale of her slaves, and the residue of her estate not otherwise disposed of, shall be divided into five equal parts. One of these parts she bequeathed to her grandsons, John S. and William Daniel, to be equally divided between them; and the will declares that "if either of my grandsons should die leaving no child or descendants surviving him, the share he receives under this will is to go to his surviv-

ing brother; and if both of my grandsons die leaving no child or descendants surviving them, then the whole of what is herein given them shall be divided equally between my son, James L. Spencer, and my daughters, Anna Louisa Sims and Elizabeth Price McChesney . . ."

The shares of John S. and William Daniel, amounting to $5,000, were collected by their father, George W. Daniel, from the executor of Mrs. Spencer, without authority, and invested by him, in his own name, in a farm called the "Buffalo" tract.

By will dated February 11, 1869, George W. Daniel devised the "Gibson" tract and the "Springfield" tract, to be divided "equally between Dr. John S. Daniel subject to said limitations and restrictions as the will of E. W. Spencer requires; the other half I give in trust to the children of William Daniel, such as he has now or may have lawfully; he is to have no interest in the property or management in any way or by any pretext whatever. The children are to enjoy the property jointly and equally."

John S. Daniel died unmarried and without "child or descendants." William Daniel and his children are still living.

The sole question for our determination is what, if any, estate have the children of William Daniel in the subject matter of litigation, the undivided moiety in the Cumberland county lands devised primarily to John S. Daniel?

It will be observed that there is no express declaration of purpose on the part of the testator that the children of William Daniel are to take any interest whatever in the moiety devised to their uncle, John S. Daniel. On the contrary, the devise to them is clearly restricted to the remaining moiety. Moreover, the will declares, that the moiety given, in the first instance, to the uncle is subject to the limitations and restrictions contained in the will of Mrs. Spencer—that is to say, "if either of my grandsons should die leaving no child or descendants surviving him, the share he receives under this will is to go to his surviving brother; and if both of my grandsons die leaving no child

or descendants surviving them, then the whole of what is given them shall be divided equally between" certain of testatrix's children.

Construing both wills together, there would seem to be no difficulty in classifying the devise of the moiety of the Cumberland lands to John S. Daniel as a *defeasible fee,* a vested estate, but one subject to be devested by his dying without leaving a child or descendant surviving him.

In 2 Min. Inst. (3d ed.) 426, 427, the learned author observes: "The possibility of limiting the whole fee by means of an *executory limitation,* and afterwards, upon some contingency, *qualifying that disposition,* and giving the estate to some other person, arises out of the fact that the several statutes (of uses, wills and grants), which give birth and validity to such limitations, dispense with *livery of seisin* to create a freehold, and thereby dispense with the corresponding *notoriety of entry* to determine it. (*Ante,* p. 233, 3 k; 2 Th. Co. Lit. 87, n. [L. 2], 768, Butler's Note II.) Thus, if a devise were made to A and his heirs, and in case A should die, leaving no issue at his death, to Z and his heirs, the limitation to Z and his heirs would be valid as an *executory limitation,* and would give to Z the fee, of which the event designated (viz., his *death without issue*), had devested A." 1 Minor on Real Prop., sec. 555.

In *Elys* v. *Wynne,* 22 Gratt. 224, the testator gave his daughter, D, a designated tract of land, "to her and the heirs of her body; but should D die without heirs, . . . my wish is that said land shall return to my other heirs . . ." Held: "(1) D took under the statute a fee simple estate in the land *defeasible* upon her dying without a child living at her death. (2) The limitation over to testator's other heirs is valid, and took effect upon the death of D without a child living at her death."

In *Randolph* v. *Wright,* 81 Va. 608, the testatrix gave her property to her two sons, P and E, and provided that if either son die without a will or lawful issue, the surviving son should

take his portion. E died without issue and intestate. Held: "E took a *defeasible* fee simple, coupled with a power of appointment by *will,* with remainder over to P, and that his *defeasible* fee simple estate having been defeated by his death, without issue living at his death, and he having failed to exercise his power of appointment by *will,* the remainder to P is good."

The same will was before the court a second time in *Johnson's Admr.* v. *Citizen's Bank of Richmond,* 83 Va. 63, and it was again held that each son took a *defeasible* fee in the land devised to him, coupled with a power of appointment by will, with remainder over to the survivor.

The devise in *Snyder* v. *Grandstaff,* 96 Va. 473, 31 S. E. 647, 70 Am. St. Rep. 863, is also identical in legal effect with the disposition in Elizabeth W. Spencer's will, and the court in that case, at page 482, denominates the estate in the first taker a *defeasible fee.*

So, in *French* v. *Logan,* 108 Va. 67, 60 S. E. 622, if there had been an ulterior limitation over upon the death of the life tenant without issue, the necessary effect would have been to make what was held in that case to be a fee simple in the issue a *defeasible fee.* See also *Waring* v. *Waring,* 96 Va. 641, 32 S. E. 150.

In Virginia, since 1787, the word "heirs" is not necessary to create an estate of inheritance; the statute providing that "where any real estate is conveyed, devised, or granted to any person without any words of limitation, such conveyance, devise or grant shall be construed to pass the fee simple, or other the whole estate or interest which the grantor or his testator has power to dispose of in such real estate, unless a contrary intention shall appear by the conveyance, will or grant." Va. Code, 1904, sec. 2420.

Hence, in the instant case, the devise to John S. Daniel, standing alone, would have invested him with a fee simple estate in the moiety of lands devised; and the effect of the qual-

ifying language, "if he should die leaving no child or descendants surviving him," is to convert what would otherwise have been a fee simple into a defeasible fee. He did die leaving no child or descendants surviving him, and by the terms of the devise the estate passed to his surviving brother, William Daniel, subject to the same condition—that is, if William Daniel should die leaving no child or descendants surviving him, the estate should pass to the children of the testatrix, Elizabeth W. Spencer.

The words "child" and "descendants," in the connection in which they occur, are not words of purchase, creating an estate in the class designated, but are words of limitation, which serve to limit or describe the estate given. 1 Min. Real Prop., sec. 152, p. 192, and authorities cited in note. In no event, therefore, can the children of William Daniel take as purchasers under the wills. Should they survive their father, the status of his estate, which until the happening of that event was a *defeasible fee,* is established as a fee simple, which, if undisposed of, the children would take *by inheritance from the father,* but not *by purchase under the will of their grandfather.* On the other hand, if William Daniel should die unsurvived by child or descendants, the estate, as we have seen, would pass by the ulterior limitation to the children of Mrs. Spencer.

It must be remembered, in this connection, that the common law construction of the phrase "dying without heirs," and similar expressions, has been changed by statute, which declares that "Every limitation in any deed or will contingent upon the dying of any person without heirs, or heirs of the body, or issue, or issue of the body, or children, or offspring, or descendant, or other relative, shall be construed a limitation to take effect when such person shall die not having such heir, or issue, or children, or offspring, or descendant, or other relative, as the case may be, living at the time of his death, or born to him within ten months thereafter, unless the intention of such limitation be otherwise plainly declared on the face of the deed or will·

creating it." 1 Rev. Code, 1819, chap. 99, sec. 26; Va. Code, 1904, sec. 2422.

The purpose of the statute is to effectuate the intention of the testator by rendering valid a limitation which would have been otherwise invalid as violative of the rule against perpetuities. Since January 1, 1820, words which had previously been construed to mean an indefinite failure of issue are now construed to mean a *definite* failure of issue, and limitations founded thereon are no longer void for remoteness.

The case of *Pettyjohn's Ex'or* v. *Woodroof's Ex'or,* 77 Va. 507, is greatly relied on to sustain appellants' contention that William Daniel took a life estate and his children a remainder in the land in controversy.

In that case the testator divided his estate equally between his six children and grandson, Seth Woodroof, and provided that if any of the children should die without leaving lawful issue then the share of the child so dying should revert to the surviving children, with similar limitation as to the share of the grandson. Woodroof, after attaining his majority, died unmarried and without issue. The court held that the grandson had a life estate in his share, with remainder to testator's children, contingent upon his dying without issue of his body. There is nothing in the language of the will to justify the statement that Woodroof took a life estate in his share. The bequest was to the children and grandson generally, but with the provision that if any of the legatees "should die without leaving lawful issue," his share should revert to the surviving children. That language, as we have seen, if applied to a devise of land, would not create a *life estate* in the first taker, but a *defeasible fee.* Possibly what the learned judge meant by saying that Woodroof took a life estate in his share was that, inasmuch as he died without issue his actual beneficial enjoyment was for life, since at his death "without leaving lawful issue" the share shifted to others. But however that may have been, the limitation over in that case was to testator's six children, and the

court properly so held, while in this case the ulterior limitation, in the event of William Daniel dying without child or descendants him surviving, is to the children of the testatrix, Mrs. Spencer.

*Affirmed.*