# Richmond

WILLIAM R. MOOREFIELD AND OTHERS V. SOL KNIGOFF
AND BOOTH-WHITE SPORT SHOP, INC.

February 26, 1940.

Record No. 2157.

Present, All the Justices.

The opinion states the case.

*O. R. Cunningham* and *A. M. Aiken,* for the plaintiffs in error.

*Crews & Clement* and *Malcolm K. Harris,* for the defendants in error.

CAMPBELL, C. J., delivered the opinion of the court.

Plaintiffs in error, children of L. D. Moorefield, deceased, brought this action of ejectment against defendants in error to recover a certain parcel of land with the buildings thereon, situated in the city of Danville, and described in the declaration as the property "commonly known as 308-310 Main Street, Danville, Va."

Plaintiffs claim title to the property now in the possession of defendants by virtue of the provisions of the last will and testament of W. H. Rice, who was the half-brother of their father, L. D. Moorefield. A photostatic copy of the will as shown by the record is as follows:

"Danville, Va. June 13 1898.

"This will made this day, June 13/98 at my Death I leave to S. E. Moorefield the Sum of 100.00 one Hundred Dollars; to E. C. Moorefield the Sum of 100.00 one Hundred Dollars; to Ella Wilmerth the sum of 100.00 one Hundred Dollars; to Daniel Moorefield the sum of one Hundred Dollars; to the Said Daniel Moorefield wife 100.00 the Sum

of one Hundred Dollars; and after all Debts of mine are Paid the Bal of my Estate to L. D. Moorefield Real Estate Bonds & Stock and all goods and Chatt*les* the said L. D. Moorefield is take Charge of Every thing as it is now Contin*ae* the Business and Pay the others their mon*y* when he thinks Best the Real Estate of 308 & 310 Main is to Stay as his and not to be Sold or traded in any way and in Case of his Death with out issu*re* all the property is to Revert to E C Moorefield or his heirs this Sign*e* and wrote this Day June 13/98

W. H. Rice."

█ To maintain the burden cast upon them by the well settled doctrine applicable to an action of ejectment, *viz:* that a plaintiff in an action of ejectment must show a superior title to the land claimed before he is entitled to a judgment in his favor, plaintiffs introduced in evidence the will of W. H. Rice, deceased, several deeds of conveyance evidencing a disposition of the property since the death of the testator, W. H. Rice, and also proved by parol evidence their relationship to L. D. Moorefield and W. H. Rice. The defendants introduced a deed bearing date June 24, 1915, from E. C. Moorefield and wife to L. D. Moorefield, conveying all of their right, title and interest to the land herein involved.

After all the evidence was introduced, the defendants made a motion to strike the evidence of the plaintiffs on the ground that "Under the will of W. H. Rice, L. D. Moorefield took a defeasible fee simple in this property, subject to be divested only by his death without issue. The evidence shows that he died leaving at least four children living." The court sustained the motion to strike the evidence of the plaintiffs and instructed the jury that a verdict for the plaintiffs could not be sustained, and thereupon the jury returned a verdict in behalf of the defendants. This action of the court is assigned as error. The contention of plaintiffs as exemplified in the petition for a writ of error is thus stated:

"Your petitioners contend that the holograph will of W. H. Rice, after disposing of all the property both real and personal, devised the real estate at 308 and 310 Main Street, Danville, Virginia, to L. D. Moorefield for life with an alternative remainder, a remainder implied in the issue of L. D. Moorefield living at his death with an alternative remainder in E. C. Moorefield or his heirs in the event that L. D. Moorefield had died without issue."

The sole question to be determined is, did the trial court correctly construe the will of W. H. Rice, *supra*?

Plaintiffs, in support of their contention, rely primarily upon these cases: *Pettyjohn's Ex'r* v. *Woodroof's Ex'r*, 77 Va. 507; *Daniel* v. *Lipscomb*, 110 Va. 563, 66 S. E. 850; *Conrad* v. *Quinn*, 111 Va. 607, 69 S. E. 952; *Rinker* v. *Trout*, 171 Va. 327, 198 S. E. 913.

While the questions determined in the first three named cases are similar, they are not analogous in fact to the question presented in the instant case, and therefore are not controlling. In the *Pettyjohn-Woodroof Case*, a majority of the court, Lewis, P., and Richardson, dissenting, construed the will of William Pettyjohn and arrived at a conclusion which upon first blush lends aid to the contention of plaintiffs, but when the clarifying opinion of Judge Whittle in the *Daniel-Lipscomb Case* is looked to, it is readily seen that the plantiffs' contention that the *Pettyjohn Case* is applicable is untenable. Speaking for the court, Judge Whittle said [110 Va. 563, 66 S. E. 853]:

"The case of *Pettyjohn's Ex'r* v. *Woodroof's Ex'r*, 77 Va. 507, is greatly relied on to sustain appellant's contention that William Daniel took a life estate and his children a remainder in the land in controversy.

"In that case the testator divided his estate equally between his six children and grandson, Seth Woodroof, and provided that if any of the children should die without leaving lawful issue then the share of the child so dying should revert to the surviving children, with similar limitation as to the share of the grandson. Woodroof, after attaining his majority, died unmarried and without issue. The court

held that the grandson had a life estate in his share, with remainder to testator's children, contingent upon his dying without issue of his body. There is nothing in the language of the will to justify the statement that Woodroof took a life estate in his share. The bequest was to the children and grandson generally, but with the provision that if any of the legatees 'should die without leaving lawful issue,' his share should revert to the surviving children. That language, as we have seen, if applied to a devise of land, would not create a *life estate* in the first taker, but a *defeasible fee*. Possibly what the learned judge meant by saying that Woodroof took a life estate in his share was that, inasmuch as he died without issue his actual beneficial enjoyment was for life, since at his death 'without leaving lawful issue' the share shifted to others."

The controversy in the latter case revolved around the construction of the will of Mrs. Elizabeth W. Spencer and the will of George W. Daniel, and the main question in issue was, "What if any estate have the children of William Daniel in the subject matter of the litigation, the undivided moiety in * * * lands devised primarily to John S. Daniel?" The "subject matter" is set forth in the written opinion as follows:

"The object of this suit is to construe certain clauses in the wills of Elizabeth W. Spencer and George W. Daniel, and to set up a remainder, by way of executory limitation, in the children of William Daniel in an undivided moiety of two tracts of land situated in Cumberland County, Virginia, known as the 'Gibson' and 'Springfield' tracts.

"The circuit court held that the children of William Daniel took no interest in the moiety of the lands devised to John S. Daniel by the will of his father, George W. Daniel, construed either alone or read in connection with the will of Elizabeth W. Spencer, which is referred to and made a part of George W. Daniel's will, and dismissed the bill on demurrer. From that decree this appeal was allowed.

"Mrs. Spencer's will bears date June 6, 1850, and directs that the money arising from the sale of her slaves, and the

residue of her estate not otherwise disposed of, shall be divided into five equal parts. One of these parts she bequeathed to her grandsons, John S. and William Daniel, to be equally divided between them; and the will declares that 'if either of my grandsons should die leaving no child or descendants surviving him, the share he receives under this will is to go to his surviving brother; and if both of my grandsons die leaving no child or descendants surviving them, then the whole of what is herein given them shall be divided equally between my son, James L. Spencer, and my daughters, Anna Louisa Sims and Elizabeth Price McChesney . . . '

"The shares of John S. and William Daniel, amounting to $5,000, were collected by their father, George W. Daniel, from the executor of Mrs. Spencer, without authority, and invested by him, in his own name, in a farm called the 'Buffalo' tract.

"By will dated February 11, 1869, George W. Daniel devised the 'Gibson' tract and the 'Springfield' tract, to be divided 'equally between Dr. John S. Daniel subject to said limitations and restrictions as the will of E. W. Spencer requires; the other half I give in trust to the children of William Daniel, such as he has now or may have lawfully; he is to have no interest in the property or management in any way or by any pretext whatever. The children are to enjoy the property jointly and equally.'

"John S. Daniel died unmarried and without 'child or descendants.' "

In concluding that John S. Daniel took a defeasible fee, subjected to be divested, this is said: "Hence, in the instant case, the devise to John S. Daniel, standing alone, would have invested him with a fee simple estate in the moiety of lands devised; and the effect of the qualifying language, 'if he should die leaving no child or descendants surviving him,' is to convert what would otherwise have been a fee simple into a defeasible fee. He did die leaving no child or descendants surviving him, and by the terms of the devise the estate passed to his surviving brother, William Daniel,

subject to the same condition—that is, if William Daniel should die leaving no child or descendants surviving him, the estate should pass to the children of the Testatrix, Elizabeth W. Spencer."

██ With the contention of plaintiffs that W. H. Rice, after disposing of all the property, both real and personal, devised the real estate involved to L. D. Moorefield for life with an alternative remainder to the issue of L. D. Moorefield, we are unable to agree. In our opinion, to reach the conclusion that L. D. Moorefield was devised only a life estate, and that it was the intention of the testator that the plaintiffs should take the fee upon his death, would necessitate basing a construction of the will upon implications and not upon the language contained in the instrument itself. In the construction of a will the court should be guided by the language employed by the testator and not base its decision upon deductions drawn from strained implications. The will, which is a holograph, demonstrates that the testator was untutored and it is going far afield to say that he contemplated the legal result contended for by plaintiffs.

██ While an affirmance of the judgment could be based on the ground that plaintiffs have not borne the burden of proving a superior title as is required in an action of ejectment, we consider it important to determine the estate devised to L. D. Moorefield. It appearing that L. D. Moorefield departed this life leaving issue living, it is our opinion that the defeasible fee acquired by him under the terms of the will became upon his death a fee simple absolute and that the title of the defendants to the land known as 308-310 situated on Main street in the city of Danville which was derived by *mesne* conveyances is unassailable. This construction of the will of W. H. Rice conforms to the holding of this court in *Rinker* v. *Trout, supra.* In that case Mr. Justice Spratley said [171 Va. 327, 198 S. E. 917] :

"We are of opinion that the decree of the circuit court holding that the appellant was entitled only to a defeasible fee in the Virginia property, subject to be divested, at her death without issue, is correct in accordance with the law

of Virginia and our rule of construction. It has long been held in Virginia, that a devise to a person with a limitation over to another, in the event of the first taker's death without issue, is a limitation which takes effect when the first devisee dies without heir or issue, and vests in the first devisee a defeasible fee. This rule is incorporated in Virginia Code 1936, section 5151, and has existed in Virginia as a statute since 1819, and is as follows:

"Every limitation in any deed or will contingent upon the dying of any person without heirs, or heirs of the body, or issue, or issue of the body, or children, or offspring, or descendant, or other relatives, shall be construed a limitation to take effect when such person shall die not having such heir, or issue, or child, or offspring, or descendant, or other relative, as the case may be, living at the time of his death, or born to him within ten months thereafter, unless the intention of such limitation be otherwise plainly declared on the face of the deed or will creating it."

The judgment is plainly right and must be affirmed.

*Affirmed.*

HOLT, J., dissenting.

One hesitates to dissent from conclusions reached by his associates which are "plainly right," but such things needs must be; if all men were agreed about all things, courts would soon be out of business.

If L. D. Moorefield took under the Rice will any fee at all, he took a defeasible fee, and the judgment under review should be affirmed.

If he took a life estate, and should he have died without issue, then this Main street property would have passed to E. C. Moorefield. He died leaving children; therefore that contingency failed and another has prevailed. It passed to his own children. *Conrad* v. *Quinn,* 111 Va. 607, 96 S. E. 952, and Prof. Graves' Article, 5 Va. L. Reg., pp. 67-91.

In neither event have we to deal with any of the presumptions against intestacy.

The right to alienate is a necessary attribute of an absolute estate. It is also an attribute of a conditional one, subject, of course, to the possibility of defeasance. Tiffany on Real Property, Vol. 1, p. 336.

The purchaser takes *caveat emptor;* he buys at his own risk, and this is doubly true where recorded muniments of title are at hand.

When we look at the will we see that "L. D. Moorefield is take charge of every thing as it is now continue the business." He was to continue the business "as it is now," which of itself would seem to indicate that Rice wished everything to remain in *statu quo;* certainly the business could not be continued "as it is now" if L. D. Moorefield could sell out the storehouse and move away. That purpose is confirmed by this statement which follows: "The real estate of 308 & 310 Main is to stay as his and not to be sold or traded in any way." It is not to stay "his" but "as his" and is not to be sold or traded away.

To argue that a testator who said that his real estate should not "be sold or traded in any way" by this first taker intended that it should not be sold or traded away by him is to "belabour the obvious." To argue that he intended to give to him the right to sell or trade away this Main street property when he said that it should not be sold or traded away is to advance a contention which answers itself. What was said is too plain for construction, and construction must be confined to the domain of ambiguity. One must go deep into the intricacies of testamentary interpretation to search out doubt. Lawful intentions, written into a will, should be followed. Men make their own wills, not always with wisdom, but they are their wills and probably please the men who make them.