## Mitchell v. United States.

Where the United States chartered a vessel for a "voyage or voyages," at a stipulated price per diem for every day when so employed, — *Held*, that the contract only embraced the employment of the vessel when on such voyage or voyages, and did not extend to demurrage.

Appeal from the Court of Claims.

The facts are stated in the opinion of the court.

*Mr. Thomas J. Durant* for the appellant.

*Mr. Assistant-Attorney-General Smith*, contra.

Mr. Justice Strong delivered the opinion of the court.

By the charter-party, the United States took to freight the claimant's steamer "Star of the South," lying in the port of New York, to load at New York or elsewhere, and proceed on a voyage thereinafter mentioned. The voyage was defined in an after-part of the charter to be " to New Orleans and return." It is evident, however, the parties had in mind possibly more than one voyage. It was stipulated that the charter should go into effect at 12 o'clock, M., on the fourteenth day of September, 1863, and should continue in force as long as said vessel might be required by the United States War Department; that is, of course, required for the voyages for which she was chartered. The United States also agreed to employ the vessel "for the voyage or voyages aforesaid." The only voyages before spoken of were from New York to New Orleans and return, or from New York to some other place of loading, thence to New Orleans, and return to New York. Under the charter, she might have been sent to China, to load there, and to proceed thence to New Orleans, returning to New York. She made a voyage from New York to New Orleans, and returned, discharging her return cargo on the 13th of October, 1863; and, being required for a second voyage to New Orleans, she was kept in continuous service from the discharge of her cargo on that day. She completed her second voyage by unloading her return cargo on the 22d of November, 1863, at New York, and from that time until Nov. 30 of the same year she performed no service for the government, though she was manned and equipped ready for

service.   On the 30th she was taken into the service of the government again, under another charter-party.   For the two voyages from New York to New Orleans and back the claimant was paid the price per day stipulated in the first charter-party, up to Nov. 22, 1863, and he was also paid the stipulated price for the services of the steamer from Nov. 30 to Dec. 30, 1863, apparently the time occupied by her voyage under the second charter.   The claimant now demands the per diem compensation for the time between the 22d of November, 1863, when the steamer completed her second voyage by discharging her cargo at New York, and the 30th of November, 1863, when she was again taken into government service under another charter-party, — a period of eight days.   The claim rests on the stipulation in the first charter, that the United States would pay for each and every day the vessel might be employed under the charter the sum of $450.   That she was not employed by the government during those eight days is manifest from the findings of the Court of Claims, though she was ready for employment.   She was chartered at first for a voyage or voyages. The contract was not a time charter, notwithstanding the compensation was agreed to be measured by the time during which she might be employed, and the contract only bound the charterers to employ her " on the voyage or voyages aforesaid," and to pay therefor the stipulated per diem compensation for every day she was employed; that is, employed on the voyages. There was no provision for demurrage.

It is argued, on behalf of the claimant, that the contract was to pay the per diem compensation until the steamer was returned to the owner, and that she was not so returned until notice of her delivery was given to him.   But we do not so read the contract. . The government undertook to furnish fuel for her navigation until she was returned to the owner in New York; but they undertook to pay only for the time she was employed. Such was the express agreement.   Had it been intended that payment should be made until the vessel was formally handed over to the owner, or notice given to him of such surrender, the words " for each and every day the vessel may be employed " would not have been used.   The promise would have been to pay for each and every day until the vessel should be returned

to the owner. In truth, she was not taken out of his possession. His officers and his seamen had charge of her; and the charterer obtained by the contract only their services in use of the vessel.

The Court of Claims found that, after the completion of the first voyage, Captain Stimson, the assistant-quartermaster at New York, indorsed on the charter-party the following order: "The services of the above vessel being required for a second voyage to New Orleans, she is kept in continuous service from the date of the discharge of her cargo, on the 13th of October, 1863." It is difficult to see why this indorsement was made or allowed, if the hiring was not for a voyage or voyages, and if it was not so understood by the parties. And when the second voyage was completed, on the 22d of November, the charter-party was suspended by order of Stimson; and it remained so suspended until Nov. 30, when the vessel was again taken into government service under another charter-party. If the contract was suspended, the vessel ceased to be in the control of the government, and the owner was at liberty to employ her at his will. And if during the period of suspension she was not out of government service, it would be incorrect to say she was again taken into that service. The quartermaster had no power to control suspended vessels.

Without saying more, it is enough for this case that the charter was for a voyage or voyages; that the engagement of the United States was to employ the vessel on the voyage or voyages, and to pay for each day she might be employed. During the eight days for which compensation is now claimed she was not thus employed, and consequently there is no liability resting on the government.

The judgment of the Court of Claims dismissing the claimant's petition will be affirmed; and it is

*So ordered*