## CLARENCE E. SYDNOR ET AL. *vs.* LAVINIA E. GRAVES ET AL.

*Distribution: where executor has life estate in whole property; administration of life tenant's estate; administrators d. b. n. c. t. a.*

A husband, by his will, left all his estate to his wife, for and during her natural life, to be used and enjoyed by her as she should think proper, as fully as though in *fee simple,* and, after her death, to pass to his children then living, and to the descendants of any deceased child; no interest or estate, however, was to vest in any child, etc., until the death of the wife. The widow, in her account, as executrix, charged herself with the securities and property of the estate, and gave herself credit for the debts paid, taxes, costs and commissions, etc., and stated that the accountant retained the balance of the estate which was bequeathed to her by the testator, subject to the provisions of the will, and stated the amount of the stocks, bonds and cash so retained, which was the total balance of the estate according to the inventory. It was *held,* that this account distributed the property to the widow as life tenant, and tended to show that all of the estate was meant to be administered.                    p. 329

No property so distributed to the widow as life tenant could vest in an administrator *d. b. n. c. t. a.* of the testator.    p. 327

There is committed to an administrator *d. b. n. c. t. a.* only the administration of property which remains in specie and that has not already been administered.                    p. 329

An administrator *d. b. n. c. t. a.* can not sue for a *devastavit* committed by his predecessor.                    p. 329

*Decided January 14th, 1913.*

Appeal from the Circuit Court No. 2 of Baltimore City (STUMP, J.).

The cause, by agreement, was argued before BOYD, C. J., PEARCE, and BURKE, JJ.

The facts are stated in the opinion of the Court.

*Joseph L. Donovan* and *Edward M. Hammond,* for the appellants.

*John Phelps,* for the appellees.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from a decree sustaining a demurrer to, and dismissing, an amended bill of complaint filed by the appellants against the appellees. It appears from that bill and exhibits that William C. Smith, of Baltimore City, died in 1880, leaving a last will and testament, which was duly admitted to probate by the Orphans' Court of Baltimore City, and letters testamentary were granted to Martha E. Smith, his widow, who was named as executrix. The will contains the following clause:

"I give and devise all my estate, real and personal, unto my wife, Martha E. Smith, for and during her natural life, to be used and enjoyed by her as she shall think proper, as fully as if the same were hers in fee simple, and at her death it is my will that my said estate shall pass to and be equally divided amongst all my children, then living, and the descendants of any deceased child, said descendants taking said deceased child's part—that is, the part said deceased child would have been entitled to receive if living at that time. It being my will that no interest or estate shall vest in any child or the descendants, if any, until the death of my wife."

Martha E. Smith, as such executrix, settled an account in the Orphans' Court in November, 1887, in which she charged herself with the inventory of the personal estate and with debts collected amounting in all to $6,822.97, and obtained credit for sums paid out and her commissions, amounting to $515.60, and then follows this statement: "Retained by this accountant the balance of estate bequeathed to her under the last will and testament of testator subject to the provisions therein contained, viz."—giving a list of

shares of stock, bonds and cash retained by her amounting to $6,307.37.

She died in the State of Virginia in July, 1908, leaving a last will and testament by which she left all of her estate, except cash on hand, to her three surviving children, Carroll H. Smith, Lavinia E. Graves and Margaret W. Graves, and left the cash to her two daughters. On the 21st of July, 1908, her will was probated in the Chancery Court of the City of Richmond, Virginia, where she resided, and her son qualified as executor. An inventory of the estate was returned and admitted to record amounting to $37,669.99 (including $2,289.99 cash in hand). In October, 1909, the Commissioner of Accounts filed a report in which he showed a balance due from the executor of $35,703.89 (after deducting the special bequest of cash to the two daughters) and distributed it to the three surviving children of the testatrix. The Commissioner of Accounts included in his report sales of stocks, etc., made by the executor, but he does not include any stock or bonds named in the inventory of Martha E. Smith, executrix of William C. Smith, but does state that, "Twenty shares of stock of the Drovers & Mechanics' National Bank appearing in the inventory seem to belong to the estate of William C. Smith, deceased, the husband of the testatrix, and as the executor of this estate is administrator *d. b. n. c. t. a.* of William C. Smith's estate, the said bank stock may be accounted for in the settlement of said estate or in a subsequent settlement in this estate, as may be hereinafter determined."

The amended bill alleges that Carroll H. Smith obtained from the Orphans' Court of Baltimore City on the 27th day of August, 1908, a grant of letters on William C. Smith's estate *d. b. n. c. t. a.* It further alleges that Martha E. Smith never distributed to herself the estate of William C. Smith, although she had been in possession of it during her widowhood, and that she came into possession of approximately $6,307.37, and that by investment and re-investment of the corpus it had increased from that sum to $39,325.69,

"which is evidenced by the inventory filed in her estate by her executor, Carroll H. Smith." It then charges that the true construction under the laws of Maryland of the will of William C. Smith is that he devised to his wife only a life estate with remainder to his children, and the descendants of his children, but that Carroll H. Smith well knowing that the estate which his mother undertook to devise to himself and his two sisters was not held by her absolutely or so she could devise it, has fraudulently undertaken to administer as executor of his mother's will upon funds which rightly belong to the estate of his father and should be distributed in accordance with his father's will under the control of the Court of Maryland, and that he had instituted proceedings in the City of Richmond for the purpose of distributing the estate to himself and his two sisters. It is then alleged that at the time of the filing of the original bill he had stated an account and filed the same, as appears by a copy thereof filed, and that pending this suit in the lower Court he had ratified the account in Virginia.

The plaintiffs in the bill are the husband and children (together with the husband of a child) of Mary C. Smith, a daughter of William C. Smith, and the defendants are the two daughters, certain children of deceased children of William C. Smith and Carroll H. Smith individually, and as administrator *d. b. n. c. t. a.* of William C. Smith. The first prayer of the amended bill is: "1. That the estate of William C. Smith be administered and settled under the jurisdiction, control and direction of this honorable Court, and that upon a construction of said will an account may be stated by which said Carroll H. Smith, administrator *d. b. n. c. t. a.* of William C. Smith, deceased, shall be charged with the entire estate as is evidenced by Exhibit D, plus such increase of the corpus of said William C. Smith's estate as shall be rightfully due." The second prayer is for a receiver, etc., and the third is that Carroll H. Smith be required to bring into this Court or to turn over to the receiver all the property belonging to the estate of William C. Smith, deceased. The fourth is for general relief.

It may be well to remark in passing that there is nothing in the copy of the inventory to show, as the bill alleges, that the corpus of the estate of William C. Smith increased in value from $6,307.37 to $39,325.69, and there is nothing in the inventory of the estate of Martha E. Smith which indicates that any part of it came from the estate of William C. Smtih, unless it be that there are two certificates of ten shares each of the Drovers and Mechanics' National Bank. Just how the figures ($39,325.69) mentioned in the bill were obtained is not very clear, but, assuming that to be the correct amount, are the appellants entitled to the relief sought?

A considerable part of the appellees' brief and some of the oral argument of their solicitor were devoted to pointing out alleged defects in the amended bill, but in view of the conclusion we have reached it will be necessary to discuss them. There could be no possible ground for contending that the lower Court could have granted any of the relief sought by this bill, unless there be some portion of the estate of William C. Smith within the jurisdiction of Maryland Courts which Carroll H. Smith, as administrator *d. b. n. c. t. a.,* was entitled to. The bill nowhere alleges or suggests that there were any assets other than those which were included in the account of Martha E. Smith, executrix of William C. Smith, and hence the lower Court was not called upon to assume jurisdiction of the estate unless some part of that included in the said account remained unadministered. We will therefore confine ourselves to that inquiry, and unless it is to be answered in the affirmative we must decline to construe the will, for the manifest reason that under the circumstances the Courts of Virginia, and not those of Maryland, must determine the rights of the parties.

Assuming but not deciding for the reason just given, that Martha E. Smith only had a life interest in the assets of the estate of William C. Smith, included in her account, as the appellants contend, can there be any further administration

on them by an administrator *d. b. n. c. t. a.*? That is defi-
nitely and conclusively answered by the decisions of this
Court. In the late case of *Crean* v. *McMahon,* 106 Md.
507, JUDGE PEARCE reviewed many of the former decisions
of this Court relating to the necessity for an administrator
*de bonis non.* One of those referred to was *Myers* v. *Safe
Deposit and Trust Co.,* 73 Md. 413, in which the terms used
in distributing the property to the life tenants were very
similar to those in the account. now under consideration.
Charles Myers, the testator, left the residue of his estate to
his wife during her life, with large powers of selling, leas-
ing, investing and reinvesting it, and after her death to
such of his children or grandchildren as she by last will and
testament should name and appoint, and in default of such
nomination and appointment, to his children and descend-
ants in the same manner as if he had died intestate. One
of the questions in that case was whether the administrators
*dc bonis non cum testamento annexo* had the right to the part
of the personal estate of Charles Myers which was by his
widow retained as life tenant under the will of her husband.
The widow, who was executrix, had settled an account in the
Orphans' Court, and after charging herself with the whole
estate and getting credit for proper charges against it for
debts, funeral expenses and costs of administration, she bal-
anced the account, using the following language: "Allowed
said accountant for the residue of the estate retained by her
as the widow of the deceased, for the purposes and subject to
the conditions and provisions set forth in the will, consist-
ing of," etc. This Court said: "How does that differ from
making the account show a balance, and then by a formal
disposition of this balance make it *in name* a distribution
to herself for life? * * * The entire residue of the estate
was given to Mrs. Myers, the executrix, for life. With it
was given large powers of sale, investment and reinvestment.
In her account she credits herself with the whole residue, and
that account was approved by the Orphans' Court. That was

a most effectual way of making the final distribution. Thereafter she held, not as executrix but as tenant for life, with the fiduciary powers conferred on her by her husband. The estate was entirely closed, and her administration was at an end; and unless there were other assets discovered which had never passed into her hands, as executrix, there was no occasion for an administration *de bonis non*." It is unusual to find a previous decision of a Court more analogous to one under consideration than that is to this. Even in reference to calling the account "The first account," and not a distribution, the Court referred to the account passed by the executrix in *Binnerman* v. *Weaver,* 8 Md. 517, and said it was "called a 'first account' and yet this Court regarded and treated that 'first account' which retained the balance of the estate under the will giving it to accountant for life, as a final account, and the entry in her account of such retention as an *effective distribution* to her as life tenant." In the case now before us the account not only had the statement referred to above the list of assets, which was equivalent to a distribution to her for life subject to the provisions of the will, but after that list there was added "Estate accounted for $6,822.97"—that being the amount of the entire estate—which tends to show that it was intended to adminster all of it.

In *Crean* v. *McMahon, supra,* JUDGE PEARCE commented on each of the two cases relied on by the appellant in that case and on the seven relied on by the appellee, and in discussing them said: "We do not think it necessary to make any further reference to *Myers* v. *Safe Deposit Co.,* 73 Md. 413, except to say that while the form of distribution there used may be approved as tending to avoid question as to including the remainderman's interest, we can not regard that form, or any special mention of the remaindermen, as essential to pass title to the legatee of a chattel real specifically bequeathed to one in remainder after a life estate"— thus approving the form used in the *Myers case* which; as we have seen, is very similar to the one now before us.

JUDGE PEARCE, after considering each of the cases above referred to, said: "It is not possible to insure literal uniformity and perfect harmony in judicial decisions upon analogous questions presented under constantly varying facts, and we find no irreconcilable conflict between the cases we have perhaps too tediously attempted to review"; but it is clear from what is said in that case, and particularly from what we have quoted from *Myers* v. *Safe Deposit Co.,* in which personal property other than chattels was included, that no title to the property thus distributed by Martha E. Smith, executrix, vested in an administrator *de bonis non cum testamento annexo* of William · C. Smith. See also *Myers* v. *Forbes,* 74 Md. 360, and *Siechrist* v. *Bose,* 87 Md. 296.

The case of *Drovers and Mechanics' Bank* v. *Hughes,* 83 Md. 335, was specially relied on by the appellants, but in *Crean* v. *McMahon* the Court quoted from the opinion in that case that "the only assignment made by them (the executors) was to Mrs. Reid 'for life only,' so that it would seem that while the life interest was transferred to Mrs. Reid, the title to remainder continues in the executors and still undistributed," and JUDGE PEARCE then added: "In other words, the Court held that the language of the assignment operated to restrict the distribution according to the natural tenor of the words employed, and to prevent it from embracing the remaindermen." As to *Woelfel* v. *Evans,* 74 Md. 346, also relied on by the appellants, JUDGE PEARCE said· in *Crean* v. *McMahon*: "Mrs. Evans died *intestate.* The distribution was not to legatees, but to next of kin. Moreover, the attempted distribution was to Mr. Evans' children, who might not be the children of Mrs. Evans, and as the Court said, was 'declaratory of no right of the true distributees of the wife's estate upon the death of the husband.'" There is therefore nothing in those or the other cases cited by the appellants in conflict with our conclusion announced above as to the effect of such a distribuiton as was made by Mrs. Smith.

We have not thought it necessary to enter upon a discussion of the question when, under our decisions, an executor may properly deliver personal property, such as that in this case, to a life tenant. The account stated by Mrs. Smith did in our judgment distribute it to her, and there would seem to be no doubt that the testator intended that it should be turned over to her, for he left all of his estate, real and personal, to her "for and during her natural life, to be used and enjoyed by her as she shall think proper, as fully as if the same were hers in fee simple." If, therefore. it be conceded, which we have done for the purposes of this case, that she only took a life estate, it was certainly not intended by him that she should hold the property as executrix, but that it should be delivered to her as life tenant. Such being the clear intention of Mr. Smith, it becomes immaterial to ascertain when an executor can turn over such personal property to a life tenant, when the will does not indicate the intention of the testator. Nor will we discuss at length the powers of an administrator *de bonis non cum testamento annexo* under our statute. It is sufficient to say that to such an administrator is committed only the administration of property which remains in specie and has not already been administered, and he cannot sue for a *devastavit* committed by his predecessors. *Stewart & Duffy, Trustees* v. *Fire Ins. Co.,* 53 Md. 571; *Morrow* v. *Fidelity and Dep. Co.,* 100 Md. 256.

Inasmuch as the Court of Virginia has jurisdiction over the estate of Mrs. Smith and can determine the rights of the parties, we have purposely avoided passing on questions not necessary to be decided by us. As we are of the opinion that the estate sought to be reached in this case has been administered, it will be unnecessary to consider other questions, and we will affirm the decree.

> *Decree affirmed, the appellants to pay the costs.*