Richmond.

SMITH AND OTHERS V. SMITH'S EXECUTOR AND OTHERS.

January 24, 1918.

1. WILLS—*Construction—Conflict of Laws.*—The law of a testator's domicile applies in construing his will as to personality, but where a farm in Virginia is disposed of by a will, the will as to that farm must be construed with reference to the law of Virginia since the tax *situs* governs.

2. DOMICILE—*Residence.*—The words "residence" and "domicile" are not convertible terms, the latter being a word of more extensive signification. To acquire a domicile in a particular place, there must be a residence there, and intention to make that place home.

3. DOMICILE—*Evidence—Probate of Will—Full Faith and Credit Clause.*—The probate of a will is not evidence in a collateral proceeding of the domicile of the testator, and other tribunals are not precluded from inquiring into the real domicile. The full faith and credit due to the proceedings of a sister State do not require that the courts of a State shall be bound by its adjudication on the question of domicile. In the trial of a collateral issue, it is open to the courts of any State, to determine, upon the evidence produced, the true domicile of the deceased.

4. DOMICILE—*Evidence—Declarations.*—A testator styled himself as "William C. Smith, of the city of Baltimore, Maryland." Such declaration on his part is entitled to little weight as evidence of his domicile in Baltimore, Maryland.

5. WILLS—*Domicile—Case at Bar.*—Although a testator died in Baltimore, Maryland, and through the necessity of his business was a resident of that city, yet it was held from his purchase of a farm in Virginia, and his relation to it, and from other evidence, that his domicile was in Virginia.

6. WILLS—*Gift of Life Estate with Absolute Power of Disposal.*— A testator gave and devised all his estate to his wife for and during her natural life, "to be used and enjoyed by her as she shall think proper as fully as if the same were hers in fee simple," and then he expressly added that "no interest or estate shall vest in any child or the descendants of any, until the death of my wife."

    *Held:* That, having denied the children in express terms any interest or estate in the property in the lifetime of his wife, this must have been because he intended his wife should have absolute control and dominion during her life; and, therefore, the wife took a fee simple.

7. WILLS—*Construction—Technical Words.*—A technical word in a will should be given its technical meaning.

8. ESTATES—*Fee Simple—Definition.*—A fee simple is an estate of perpetuity, and confers an unlimited power of alienation, and no person is capable of having a greater estate or · interest in land. Every restraint upon alienation is inconsistent with the nature of a fee simple.

9. WILLS—*Construction—Intention.*—Intention, it is often said, is the polar star to guide in the construction of wills, and when discovered effect must be given to it unless it violates some rule of law. The intent of the testator must be gathered from the will itself; from the words used, the true meaning of the words. While decided cases give much assistance in the interpretation of wills, it is also fairly true as has been said, that "No will has a twin brother;" therefore, it frequently happens, as in the instant case, that no decided case is exactly in point, the words of the will differing, though slightly, in each case.

Appeal from a decree of the Chancery Court of the city of Richmond. Decree for defendants. Complainants appeal.

*Affirmed.*

The opinion states the case.

*Daniel Grinnan, Hill Carter* and *A. R. Dickinson,* for the appellants.

*A. W. Patterson, John Phelps, Christian, Gordon & Christian,* for the appellees.

PRENTIS, J., delivered the opinion of the court.

The opinion of the Honorable William A. Moncure, judge of the Chancery Court of the city of Richmond, which fol-

lows, is justified by the record and sufficiently supports the decree complained of, and therefore it will be affirmed.

"This is an extremely interesting case. William C. Smith died in the city of Baltimore in February, 1880, and on February 26, 1880, his last will and testament, which was dated May——, 1877, was probated in the Orphans Court of the city of Baltimore, and on May 13, 1880, a certified copy was duly probated and admitted to record by the Chancery Court of the city of Richmond, Va., and in each court Martha E. Smith, the widow, qualified as executor under the will.

"The part of the will specially to be considered is as follows:

" 'I, William C. Smith, of the city of Baltimore, Maryland, do make this my last will and testament, hereby revoking all others.

" 'Item First. I give and devise all my estate, real and personal, unto my wife, Martha E. Smith, for and during her natural life to be used and enjoyed by her as she shall think proper, as fully as if the same were hers in fee simple, and at her death, it is my will that my said estate shall pass to and be equally divided amongst all my children then living and the descendants of any deceased child, said descendants taking said child's part—that is, the part said deceased child would have been entitled to receive if living at that time. It being my will that no interest or estate shall vest in any child or the descendants of any, until the death of my wife.'

"William C. Smith left surviving him six children, four daughters and two sons.

"The inventory of his estate as filed in the orphans court footed up $6,039.14, and in 1887 the executrix filed in that court her account with the estate. This account was duly confirmed and shows that she, Martha E. Smith, 'retained the balance ($6,307.37) of the estate bequeathed to her under the last will and testament of testator subject to the provisions therein contained.'

"In 1908 Martha E. Smith being domiciled in Virginia and a resident of Richmond, died, and her last will and testament was duly probated and admitted to record in the Chancery Court of the city of Richmond. Carroll H. Smith, her son, qualified as executor and acknowledged a bond in the penalty of $40,000 with the Virginia Trust Company as surety.

"By her will Martha E. Smith gave her entire estate to her three living children, Margaret Graves, Lavinia Graves and Carroll H. Smith. Her estate as shown by her executor's account footed up more than $40,000.00.

"The plaintiffs in this suit are the grandchildren of Wm. C. and Martha E. Smith, whose parents, Mrs. Sydnor, Mrs. Niemeyer and O. V. Smith, died after the death of Wm. C. Smith but in the lifetime of Martha E. Smith, while the defendants are Lavinia E. Graves, Margaret W. Graves and Carroll H. Smith, the sole beneficiaries under the will of Martha E. Smith, deceased, and Carroll H. Smith, executor under the will of Martha E. Smith, and the Virginia Trust Company, his surety.

"Carroll H. Smith is a non-resident of this State and is not personally before the court.

"It is the claim of the plaintiffs that William C. Smith was domiciled in the State of Maryland at the time of his death, and that by the terms of his will properly construed Martha E. Smith acquired only a life estate in his property and at her death all of said estate passed to the children of William C. Smith living at that time and to the children of any deceased child, such child or children to take the part the deceased child would have taken if alive.

"The plaintiffs further claim that the entire estate of Martha E. Smith, deceased, so administered by her executor, was no other than the trust estate given her for life by the will of W. C. Smith, together with the growth of that estate and the profits and gains resulting from fortunate

investments and reinvestments of the same; so that the plaintiffs claim title and right to one-half of the estate of Wm. C. Smith, deceased, which estate they claim was administered and distributed as the estate of Martha E. Smith, deceased. In passing it may be stated that the evidence with fair accuracy traces some of the original estates with gains through successive purchases and sales to the property held by Mrs. Smith at her death.

"The defendants deny the claims of the plaintiffs and say that the estate of W. C. Smith passed under his will to Martha E. Smith in absolute right, and that the estate of Martha E. Smith, deceased, distributed by her executor, was her absolute property and was not impressed with any trust whatever.

"The bill alleges that William C. Smith was domiciled in Maryland, while the answer of the Graveses denies all and singular the allegations of the bill except those admitted to be true, so that the domicile of W. C. Smith must be determined.

"To interpret and construe the will of Wm. C. Smith, deceased, his domicile must be first ascertained, as the law of his domicile applies in construing the will as to personalty. *Bolling* v. *Bolling*, 88 Va. 525-6, [14 S. E. 67.]

"The farm in Orange county was disposed of by his will, so that as to the farm the will must be construed with reference to the law of Virginia since the tax *situs* governs. Minor on Conflict of Laws, sec. 11-29; sec. 12, p. 33.

"In *Pendleton* v. *Commonwealth,* 110 Va. at p. 232-3, [65 S. E. 536], the court said: 'While the words "residence" and "domicile" are not convertible terms, the latter being a word of more extensive signification and including beyond mere physical presence at the particular place, positive or presumptive proof of an intention to make it a permanent abiding place * * *

44

" 'To acquire a domicile in a particular place, there must be a residence there, and intention to make that place his home.'

"In *Long* v. *Ryan*, 30 Gratt. (61 Va.) 719, the court said: 'There is, however, a wide distinction between domicile and residence, recognized by the most approved authorities everywhere. Domicile is defined to be a residence at a particular place, accompanied with positive or presumptive proof of an intention to remain there for an unlimited time. To constitute a domicile, two things must concur—first, residence; secondly, the intention to remain there. *Pilson, Trustee*, v. *Bushong*, 29 Gratt. (70 Va.) 229; *Mitchell* v. *United States*, 21 Wall. 350 [24 L. Ed. 702]. Domicile, therefore, means more than residence. A man may be a resident of a particular locality without having his domicile there. He can have but one domicile at one and the same time, at least for the same purpose, although he may have several residences. According to the most approved writers and lexicographers, residence is defined to be the place of abode, a dwelling, a habitation, the act of abiding or dwelling in a place for some continuance of time. To reside in a place is to abide, to sojourn, to dwell there permanently or for a length of time.'

"To the same effect is the case of *Lindsay* v. *Murphy*, 76 Va. at p. 428, as well as the decisions of the courts of other States. *Raymond* v. *Leishman*, 243 Pa. 64 [89 Atl. 791, L. R. A. 1915 A, 400], Ann. Cas. 1915 C, 780, and note.

"The will has been probated for years, therefore the validity of the will cannot be questioned or attacked, as full faith and credit must be given to the judgment of the probate court.

"The plaintiffs offer no legal proof of domicile of W. C. Smith but seem to rely solely on the will and its probate in Maryland as proof that his domicile was Maryland.

"It may be here stated that the settled doctrine of the Supreme Court of the United States and the English House of Lords is that the probate of a will is not evidence in a collateral proceeding of the domicile of the testator, and that other tribunals are not precluded from inquiring into the real domicile.

"In *Tilt* v. *Kelsey,* 207 U. S. 43 [28 Sup. Ct. 1], 52 L. Ed. 95, the will of Albert Tilt was probated in New Jersey, the letters testamentary granted by the surrogate described him as 'late of the county of Morris deceased,' and his estate was fully administered by the probate court of New Jersey. The State of New York sued the executors of Tilt's will in the State courts of New York for a succession tax due the State of New York, claiming that Tilt died domiciled in New York, and the question presented to the court was whether the adjudication of the New Jersey court that Tilt was, at the time of his death, a resident of New Jersey, was conclusive upon the State of New York, a stranger to the proceeding. If it was, that ended the matter. In rendering the opinion of the court, Mr. Justice Moody said: 'But, upon principle and authority, that adjudication, though essential to the assumption of jurisdiction to grant letters testamentary, was neither conclusive on the question of domicile, nor even evidence of it as a collateral proceeding,'—citing *Thormann* v. *Frame,* 176 U. S. 350 [20 Sup. Ct. 446, 44 L. Ed. 500]; *Overby* v. *Gordon,* 177 U. S. 214 [20 Sup. Ct. 603, 44 L. Ed. 741]; *Dallinger* v. *Richardson,* 176 Mass. 77 [57 N. E. 224]; *Mutual Ins. Co.* v. *Tisdale,* 91 U. S. 238 [23 L. Ed. 314]; *De Mora* v. *Concha,* L. R. Ch. Div. 268, affirmed in L. R. 11 App. Cas. 541; *Brigham* v. *Fayerweather,* 140 Mass. 411 [5 N. E. 265].

"The opinion of Mr. Justice Moody, after quoting from the opinion of Mr. Justice Holmes in the case of *Brigham* v. *Fayerweather, supra,* says: 'We think that this question expresses the correct rule and that it is sustained by the

decisions of this court. Applying it here, it follows that the full faith and credit due to the proceedings of the New Jersey court do not require that the courts of New York shall be bound by its adjudication on the question of domicile. On the contrary, it is open to the courts of any State, in the trial of a collateral issue, to determine, upon the evidence produced, the true domicile of the deceased.'

"It is insisted by the plaintiffs that even if the letters of administration and probate of the Orphans Court of the city of Baltimore are not evidence of the domicile of Wm. C. Smith, yet the testator in his will styled himself, 'William C. Smith, of the city of Baltimore, Maryland,' and that such declaration on his part is proof of his Maryland domicile.

"In Story on Conflict of Laws, Judge Story, in discussing 'What Constitutes Domicile,' in chapter 111, section 44, note (d) on page 45, at page 46 says: 'His description of himself in legal instruments are treated as declarations, but in some cases it has been said that by themselves they are entitled to but little weight' and he cites numerous authorities in support of his statement.

"It is therefore manifest that the domicile of William C. Smith being an issue in this suit, his domicile must be determined from all of the evidence in the suit in like manner as any other fact.

"The evidence established Virginia his domicile of origin, he having been born and spent his life until middle age in Henrico county, Virginia, and the vicinity of Richmond. Prior to the Civil War he was in command of steamboats plying between Richmond and Norfolk, and between Washington and Quantico, Va. His wife was domiciled in Virginia before her marriage. After the Civil War, in the year 1865, he went to Baltimore as superintendent of the Baltimore Steam Packet Co., which ran steamers between Baltimore and Norfolk, Virginia. He owned no real estate in Baltimore, but lived with his family in a rented house or

boarded. On June 10, 1875, his youngest daughter, Margaret, and the only unmarried child, was married to Jos. C. W. Graves, a farmer of Orange county, Virginia. After the marriage Margaret and her husband occupied as a home the husband's farm in Orange county.

"At that time Lavinia Smith Graves, another daughter of W. C. Smith, was also living with her husband, C. L. Graves, on his farm in Orange county. C. L. Graves and Jos. W. C. Graves were brothers and the two sisters, Margaret and Lavinia, having married brothers, were living near to each other, in fact their farms were subdivisions of a larger farm of the Graves estate. In October, 1875, W. C. Smith purchased a farm in Orange county, Virginia, which seems to have been the only real estate he ever owned, adjoining, or near to the homes of these two daughters. After the marriage of Margaret in June, 1875, W. C. Smith broke up housekeeping in Baltimore and boarded with his son, Carroll. W. C. Smith's will is dated May, 1877. Not attempting to quote their exact language, but only the substance, his two daughters, Margaret and Lavinia Graves, testified that his idea and purpose in buying the farm in Virginia was to be near his two daughters and to have a home there with them, and that their father so considered it and always spoke of it as home. C. L. Graves testified to the same effect. They also said their father, W. C. Smith, stocked the farm and furnished the dwelling with a view of making it his home. The record further shows that Robert Courtney, the father of Martha E. Smith, had in August, 1850, conveyed a house and lot on 2nd street, Richmond, Va., in trust for Martha E. Smith and her children, and the will of W. C. Smith expressly shows that the Orange county farm had been purchased in part with $2,400, the proceeds of the sale of trust property in Richmond, and that this had been done under decrees of the Chancery Court of Richmond. Is it not fair to presume that this transaction was

with the consent of Martha E. Smith and that the purchase of the farm was for a family homestead?

"On October 19, 1880, Martha E. Smith as executrix (the printed advertisement is in evidence) sold all of the personal property of W. C. Smith, deceased, on this Virginia farm, consisting of household and kitchen furniture, high grade cattle, hogs, three horses, farming implements, etc. Among the items of personal use of the family thus sold it may be well to enumerate household and kitchen furniture, family carriage sold for $125, a buggy horse, a driving horse for Mrs. Smith, W. C. Smith's own riding horse and his shot gun. Margaret W. Graves says that after her father bought this farm her mother, Martha E. Smith, spent much of her time there looking after the farm. It is also shown that W. C. Smith came up to the farm all of his holidays and week ends. The last time he was at the farm he said he intended to go to Baltimore, close up his business, and come back there for good. He was then advanced in years, returned to Baltimore and was suddenly stricken with paralysis, died, and was buried in Richmond, Virginia.

"It is therefore reasonable to say that, after the purchase of the Orange county, Virginia, farm and his relation to it as set out above, his domicile was Virginia, even though from the necessity of his business he was a resident of Maryland.

"The will of William C. Smith, both as to realty and personalty, is therefore to be construed in accordance with the laws of Virginia.

"The question then is, what is the meaning of his will? What estate did his widow, Martha E. Smith, take under it?

" 'Intention, it is often said, is the polar star to guide in the construction of wills, and when discovered effect must be given to it unless it violates some rule of law.'

Judge Burks, in *Miss. Society* v.. *Calvert*, 32 Gratt. (73 Va.) at page 361.

"The intent of the testator must be gathered from the will itself; from the words used, the true meaning of the words. While decided cases give much assistance in the interpretation of wills, it is also fairly true as has been said, that 'No will has a twin brother;' therefore, it frequently happens, as in this case, that no decided case is exactly in point, the words of the will differing, though slightly, in each case.

"What then do the words, 'to be used and enjoyed by her as she shall think proper, as fully as if the same were hers in fee simple,' as used by the testator, mean?

"It is clear that without these words Martha E. Smith would have taken a life estate only; and if these words mean nothing then she took only a life estate. But are these words meaningless? I do not think so.

"The testator's primary object was to provide for his wife, Martha E. Smith, and to this end he applied his entire estate. He begins by giving and devising to her, 'All my estate, real and personal, for and during her natural life,' this language of itself would have given her only a life estate, and then follows, 'to be used and enjoyed by her as she shall think proper as fully as if the same were hers in fee simple.' Having given and devised to his wife, 'all my estate, real and personal, for and during her natural life to be used and enjoyed by her as she shall think proper as fully as if the same were hers in fee simple,' the testator in the same clause of his will adds, 'it being my will that no interest or estate shall vest in any child or the descendants of any until the death of my wife.'

"In view of the right that he had given his wife to use the estate 'as fully as if the same were hers in fee simple,' what possible reason was there, or could he have had, for adding the clause or sentence referred to, unless it be that

during her life his wife was to have absolute dominion and control over all his estate 'to be used and enjoyed by her as she shall think proper as fully as if the same were hers in fee simple.' He expressly said no interest or estate was. to vest in any child or the descendants of any until the death of his wife, thus giving the whole estate to his wife during her life with absolute control and use of it to the same extent as if the entire estate was an absolute estate in the wife. The wife was given the power of absolute dominion and control, and the testator's children or descendants had by the express words of the will no vested interest or estate until the death of the wife.

"If one has the right and power to use and enjoy property as one thinks proper to the same extent as the law gives to one owning a fee simple title, then the one who has such right and power is the fee simple owner of that property.

"What is 'fee simple'? In Kent's Commentaries, Volume IV, page 5, 'It is an estate of perpetuity, and confers an unlimited power of alienation, and no person is capable of having a greater estate or interest in land. Every restraint upon alienation is inconsistent with the nature of a fee simple.'

"Now appropriately insert for the words 'fee simple' in W. C. Smith's will the above definition and we would have, 'I give and devise all my estate, real and personal, to my wife, Martha E. Smith, for and during her natural life to be used and enjoyed by her as she shall think proper as fully as if the same were hers in perpetuity and with unlimited power of alienation, and at my death it is my will,' etc.

"The inserted words would give Martha E. Smith unlimited power of alienation or disposition, and yet the inserted words are, as shown, just what 'fee simple' means. The technical word should be given a technical meaning.

"In *Burwell's Ex'r* v. *Anderson*, 3 Leigh (30 Va.) at

pages 355-6, Judge Tucker said: 'From the earliest time, it has been among the received doctrines of the common law, that an absolute and unqualified power of disposing conferred by will, and not controlled or explained by any other provision, should be construed as a gift of the absolute property. In this the law but corresponds with the dictates of common reason. Every man of ordinary capacity would understand the power to dispose of a thing as he pleased as a gift of the thing itself; and hence every one who uses the phrase without qualification, is understood by the law as intending a gift. The power of absolute disposition is, indeed, the eminent quality of absolute property. He who has the absolute property, has inseparably the absolute power over it; and he to whom is given the absolute power over an estate, acquires thereby the absolute property; unless there is something in the gift which negatives and overthrows this otherwise irresistible implication.'

"In the argument of Mr. Conway Robinson of the case of *May* v. *Joynes*, 20 Gratt. (61 Va.) at page 703, the principle is expressed as follows: 'When a life estate is created in terms, and to this is added a power of ulterior disposition, unconfined as to mode or object, no case has been produced suggesting that this power is naked power, and requiring to be executed in order to divest the grantor of the fee. Such power united to such an interest, is not a power requiring to be actually executed, but the two together are descriptive of the most absolute title known to the law'— citing as authority *Pulliam* v. *Byrd*, 2 Strob. Eq. [S. C.] 134, 138.

"In *Bowen* v. *Bowen*, 87 Va. at page 440 [12 S. E. 885, 24 Am. St. Rep. 664], Judge Lacy says the words, 'In fact, during the life of my said wife, I wish her to possess and enjoy the said property, as if she enjoyed a fee simple and absolute estate,' fully express a gift of the absolute property.

45

"Contrast the similarity of the above quoted words with the words used by W. C. Smith and now under consideration.

"In *Missionary Society* v. *Calvert*, 32 Gratt. (73 Va.) at page 363, in speaking of the will then being construed by the court, Judge Burks said, 'the language imports absolute dominion, and absolute dominion is one of the best descriptions of absolute property.'

"And so it seems under the will of Wm. C. Smith his wife had absolute dominion, since she had power to use the property as she thought proper as fully as if it were hers in fee simple, that is, as if it were hers in perpetuity with unlimited power of alienation.

"The rule which controls in decisions of this character is thus stated by Judge Harrison in *Farish* v. *Wayman*, 91 Va., page 430 [21 S. E. 810]. Says he: 'That an estate for life, coupled with the absolute power of alienation, either express or implied, comprehends everything, and the devisee takes the fee.'

"He also says this principle of law has become so firmly fixed that 'it may now be regarded as a canon of property.' Reviewing the cases on this subject one finds this doctrine firmly established, from the early case of *Shermer* v. *Shermer*, 1 Wash. 266 [1 Am. Dec. 460], down to *Hansbrough* v. *Pres. Church*, 110 Va. 15 [65 S. E. 467], one of the latest cases.

"In *Robertson* v. *Hardy*, 23 S. E. 766 (2 Va. Dec. 275), Judge Riely says: 'Absolute dominion imports absolute ownership. When it is the intention of the testator that the first taker shall have an unlimited power of disposition over the property devised or bequeathed, whether such intention be expressed, or necessarily implied, a limitation over to another is void.'

"In the case of *Honaker* v. *Duff*, 101 Va. 675 [44 S. E. 900], the doctrine of *May* v. *Joynes* is reviewed at length and the two articles on the subject, one by Judge Burks in

1 Virginia Law Register, at page 219, the other by Prof. Charles A. Graves in 3 Virginia Law Register at page 65, are fully considered, and from that case the doctrine may be thus stated: Where the limitation is of a life estate, but there is given full power of disposition over the fee, which, if conferred without limitation or restriction as to time, mode or purpose of its exercise, such full power of disposition would serve to enlarge the life estate expressly given into a fee simple by implication.

"In the instant case the testator gave and devised all his estate to his wife for and during her natural life, 'to be used and enjoyed by her as she shall think proper as fully as if the same were hers in fee simple,' and then he expressly added that 'no interest or estate shall vest in any child or the descendants of any, until the death of his wife.' Thus he denied the children in express terms any interest or estate in the property in the lifetime of his wife, and this must have been because he had intended his wife should have absolute dominion and control during her life.

"In their answer the defendants set up the plea of *res adjudicata*, and in proper order that should have been treated first. Suffice it to say, the case of *Sydnor* v. *Graves*, 119 Md. 321 [86 Atl. 341], was in favor of the defendants on grounds which did not preclude this suit.

"The conclusion reached is that under the will of W. C. Smith his wife had an absolute estate (fee simple) in the entire property, and she having by her will disposed of her own estate, in which the plaintiffs had no interest, they cannot recover in this suit.

"The bills will be dismissed."

*Affirmed.*