# Richmond

ANNIE MARGENIA RINKER v. I. HENRY TROUT AND CHARLES
W. SIMPSON, EXECUTORS, ETC., ET ALS.

October 7, 1938.

Present, Campbell, C. J., and Hudgins, Gregory, Eggleston
and Spratley, JJ.

The opinion states the case.

*John Locke Green, Emery N. Hosmer* and *Albert Lyman,* for the appellant.

*Weaver & Armstrong* and *Frederick Stohlman,* for the appellees.

SPRATLEY, J., delivered the opinion of the court.

Lina V. Murphy, a resident of the District of Columbia, died in May, 1934, testate. Her last will and testament was probated in the District of Columbia, and I. Henry Trout and Charles W. Simpson, the executors named in the will, qualified there.

Under the will, Mrs. Murphy devised and bequeathed all of her property, both real and personal, after the payment of her debts and two bequests of $1 each, in equal shares to her two daughters, Mrs. Martha Charlotte Macatee and Mrs. Margenia Rinker, with a provision in connection with the devise to Mrs. Rinker as follows: "And in case my daughter, Annie Margenia Rinker, should pass away without issue, I devise her share of my property to go to the children of my daughter, Martha Charlotte Macatee." The testatrix possessed real and personal property in the District of Columbia, and real property in Virginia and Florida.

In connection with the real property in Virginia, the will contained the following clause:

"Item 3. I do not want the Opera House in Front Royal, Virginia, to be sold as long as it pays financially as much as Three Thousand Five Hundred ($3,500.00) or Four Thousand ($4,000.00) Dollars annually. I further request that the Administrator pay off the mortgage on the St. Petersburg, Florida, property from the income of the Opera

House in Front Royal, Virginia, and the balance of the income to be divided between my two daughters mentioned above."

In May, 1935, Mrs. Rinker filed a bill in the District Court of the United States for the District of Columbia, in which she alleged that she was entitled to a one-half fee simple interest in the entire residuary estate of Mrs. Murphy, including the real property in Virginia, and with a prayer that the will be so construed.

On November 14, 1934, an authenticated copy of the will was proved according to the laws of this State, and probated in the county of Warren, Virginia. Thereafter, I. Henry Trout and Charles W. Simpson also qualified in the said county as executors of the will. These executors, in March, 1936, filed the bill in these proceedings, primarily, to secure the advice of the court with reference to a sale of the opera house in Front Royal. The bill set out the qualifications of the executors as such in the two jurisdictions, listed the property of the testatrix, and alleged that the opera house in Front Royal did not yield an income in excess of $1,200 annually, and could not be leased to produce an income amounting to $3,500 per annum. They admitted that the will did not, in express terms, authorize and empower them as executors to make sale of the Virginia property. They prayed that the will be construed with respect to their duties, and, if it became their duty to make sale of the property, that they be given the advice and guidance of the court.

All interested persons were made parties, including the four children of Mrs. Macatee, who were adults and *sui juris.*

Mrs. Rinker filed her answer in which she concurred in the prayer of the bill that the executors make sale of the opera house, but further prayed that they be required to account for the proceeds of the sale as should be determined by the court in the District of Columbia, in the suit therein filed by her, and that she be declared to have an absolute and indefeasible fee simple interest therein. The other

defendants concurred in the prayer of the bill that the opera house be sold, and prayed that the proceeds of the sale be disbursed among the parties entitled thereto, in accordance with the will of the testatrix.

The cause was heard upon the bill and answers. No evidence was taken, and the record contains no authenticated copies of the proceedings in the suit instituted in the District of Columbia, except those relating to the qualification of the executors there, and reports of their accounting.

The trial court, on March 2, 1936, entered its decree directing a sale of the Virginia property in accordance with the prayer of all the interested parties, and adjudged that Mrs. Rinker was entitled to the income on one-half of the net proceeds from the sale of the said property during her life, and in the event she should die without issue, then the said one-half of the net proceeds should pass to and become the property of the children of Martha Charlotte Macatee. The decree further recited that the court found it necessary and proper to construe the will insofar as the rights of the devisees in the opera house property were concerned, and that all the parties in interest had prayed for a construction of the will, and concurred in the necessity therefor.

In accordance with the above decree, the opera house was sold for $20,000. After payment of the costs, fees, and other claims against the proceeds, the remainder was divided into two parts, and one-half was directed to be paid to Mrs. Martha Charlotte Macatee, and the remaining one-half, amounting to approximately $8,000, was directed to be invested, and the income therefrom paid to Mrs. Rinker.

Although as before stated, the record contains no evidence of the court proceedings in the District of Columbia, there was presented at the bar of this court, during the argument, a certified copy of a decree of the District Court of the United States for the District of Columbia, in the suit instituted by Mrs. Rinker, which reads in part, as follows: "That the last will and testament of Lina V. Murphy * * * be construed as giving to the plaintiff, Annie Margenia

Rinker, an indefeasible fee simple interest and title to one-half of so much of the estate of the said decedent as is in the hands of the executors in the District of Columbia * * * ."

The appellant assigns several grounds of error. She contends first, that inasmuch as a suit was pending in the District of Columbia to construe the will, the Circuit Court of Warren county was without jurisdiction to construe it; second, that there was no allegation in the bill or answers which called for a construction of the will; third, that the will should be construed in accordance with the law of the District of Columbia, the domicile of the decedent; and, fourth, that there was an equitable conversion of the Virginia real estate into personal property by reason of the sale thereof, and that the law required the distribution of the proceeds as personalty, whereby she was entitled to an absolute estate in one-half of the net proceeds.

██ We think the contention that the Circuit Court of Warren County had no jurisdiction, because jurisdiction had been assumed by a federal court, is without merit. No real question of comity or conflict of jurisdiction is involved. There is nothing in the record to show that the jurisdiction of the District of Columbia court was invoked on grounds of a strictly federal nature. The courts of that district are federal courts in the sense that they are created under the Constitution of the United States, or by acts of Congress in pursuance thereof. In addition to such federal jurisdiction as may be conferred upon such courts, they are also required to administer laws enacted for the government of the District of Columbia as a federal territory. Whatever may have been the grounds of jurisdiction there invoked in the case before us, the decree presented to us from the District of Columbia court, significantly shows that its ruling specifically affected only *"so much of the estate of the said decedent as is in the hands of the executors in the District of Columbia."* There is no reference whatever to the title or ownership of real property in Virginia.

■ The courts of the District of Columbia are vested not only with jurisdiction and power analogous to those of the Federal courts within the several States, but with powers analogous to those which the States have vested in their own courts, in order to perform the necessary judicial and administrative functions required in the permanent federal territory which surrounds the seat of the government at Washington. *O'Donoghue* v. *U. S.*, 289 U. S. 516, 53 S. Ct. 740, 77 L. Ed. 1356.

■ It seems to be generally settled, certainly in Virginia, that the operative effect of a will and its construction as to personalty is governed by the law of the testator's domicile, but that as to the disposition of real estate, or the creation of any interest therein, the law of the place where the property is situated at the time of the testator's death governs,—that is, the *lex loci rei sitae*. *Smith et als.* v. *Smith's Ex'r et als.*, 122 Va. 341, 94 S. E. 777; Harrison on Wills and Administration, section 191; 69 C. J. 47.

The Supreme Court of the United States has repeatedly approved this principle. That court said in *De Vaughn* v. *Hutchinson*, 165 U. S. 566, 570, 17 S. Ct. 461, 462, 41 L. Ed. 827:

"It is a principle firmly established that to the law of the state in which the land is situated we must look for the rules which govern its descent, alienation and transfer, and for the effect and construction of wills and other conveyances. *U. S.* v. *Crosby*, 7 Cranch (11 U. S.), 115 (3 L. Ed. 287); *Clark* v. *Graham*, 6 Wheat. (19 U. S.), 577 (5 L. Ed. 334); *McGoon* v. *Scales*, 9 Wall. (76 U. S.), 23 (19 L. Ed. 545); *Brine* v. *Hartford F. Ins. Co.*, 96 U. S. 627 (24 L. Ed. 858)."

In the case of *Clarke* v. *Clarke*, 178 U. S. 186, 20 S. Ct. 873, 44 L. Ed. 1028, where almost precisely the same point under review here was raised, the court reiterated the foregoing rule, and cited numerous authorities.

The case of *App* v. *App*, 106 Va. 253, 55 S. E. 672, mainly relied on by the appellant, may be readily distinguished from the case before us. From the opinion in that case,

it appears that the testator was a resident of Pennsylvania, where he died, where his will was probated, his executors qualified, and his estate distributed. An action was brought in Virginia to recover certain monies paid a beneficiary by the executors. For the purposes of that suit, it was conceded that the will was to be construed according to the laws of Pennsylvania. The consideration of the court was devoted principally to two questions,—whether the laws of the State of Pennsylvania had been sufficiently proven, and the interpretation of such laws.

In some jurisdictions, as cited by the appellant, it is held that in all cases, a will is to be construed according to the law of the domicile of the testator, whether the property possessed be real or personal. These decisions are based upon a statute or a rule of construction peculiar to those jurisdictions.

While the laws of the District of Columbia have not been proven in evidence, it is admitted by counsel for the appellant, in their briefs, that the ruling contained in the decree of the District of Columbia court is based upon a statute unlike the Virginia statute governing in such cases.

The pleadings and the decree of the trial court conclusively show not only the necessity for a construction of the will by the trial court, but the actual prayer of all parties, including the appellant, for a construction. In order to determine who was entitled to the proceeds from the sale of the real property, it was first necessary to determine who was entitled to the property.

The next question is whether, under the provisions of the will, there was an equitable conversion of the opera house as real property into personalty. This involves a consideration whether the will directed a sale thereof, and a division of the proceeds among the beneficiaries. If the will of the testatrix directed such sale, the proceeds must be considered as personalty. In the absence of a clear and imperative direction to convert realty into personalty, the doctrine of equitable conversion depends both as to its existence and as to its extent on the testator's intention.

A conversion is not to be inferred in the absence of an imperative direction, unless there are other circumstances sufficiently implied to make clear such intention. To ascertain the intention of a testator, consideration must be given to the will as a whole. *Marcy* v. *Graham,* 142 Va. 285, 128 S. E. 550; *Moore* v. *Kernachan,* 133 Va. 206, 112 S. E. 632, 633; *Meade* v. *Campbell,* 2 Va. Dec. 669, 672, 34 S. E. 30; 7 C. J., Conversion, section 25, *et seq.*

Judge Harrison, in his excellent work on Wills and Administration, on the doctrine of equitable conversion, says, in Volume I, section 291, "To have the effect in equity of a conversion, the direction to sell or buy, as the case may be, must not be merely optional, it must be imperative. The intention, however, to convert may be implied without express words directing a conversion. It is sufficient if such intention be clear."

All the real property, including the opera house, was devised directly to the two devisees, and not to the executors. There is not in item 3, nor in any other provision of the will, an imperative direction either to the devisees or to the executors to sell. Instead of a direction to sell, there was a suggestion expressed in the nature of a wish that the land not be sold, certainly as long as it yielded a named sum. Even though the annual return was less than that sum, it was not required to be sold. The wish of the testatrix was in the nature of advice, but advice merely. Whether or not sale was to be made, was a question for the devisees. They had the right to sell the land, even if it brought more than $3,500 per year, and also the right to refuse to sell if the annual income was less than that sum. The last sentence in item 3, requesting that the income from the opera house be used for named purposes, indicates further the thought and intention that it would be held as real property to yield such income.

Seeking the intention of the testatrix as our main guide, by reading the will as a whole, and giving effect to every word and clause, we are unable to find an implication that the testatrix desired to effectuate a conversion.

The suit for the sale of the property, although not in the usual form and procedure, was more or less, in effect, a suit for the partition of real estate in which all parties joined and consented. The proceeds, therefore, passed as real estate. Virginia Code 1936, chapter 217, section 5347.

We are of opinion that the decree of the circuit court holding that the appellant was entitled only to a defeasible fee in the Virginia property, subject to be divested, at her death without issue, is correct in accordance with the law of Virginia and our rule of construction. It has long been held in Virginia, that a devise to a person with a limitation over to another, in the event of the first taker's death without issue, is a limitation which takes effect when the first devisee dies without heir or issue, and vests in the first devisee a defeasible fee. This rule is incorporated in Virginia Code 1936, section 5151, and has existed in Virginia as a statute since 1819, and is as follows:

"Every limitation in any deed or will contingent upon the dying of any person without heirs, or heirs of the body, or issue, or issue of the body, or children, or offspring, or descendent, or other relative, shall be construed a limitation to take effect when such person shall die not having such heir, or issue, or child, or offspring, or descendent, or other relative, as the case may be, living at the time of his death, or born to him within ten months thereafter, unless the intention of such limitation be otherwise plainly declared on the face of the deed or will creating it."

In the case of *Randolph* v. *Wright*, 81 Va. 608, the question here involved was at issue. There the will of the testatrix left her entire estate to her two sons, with a proviso that "should either son die without a will or lawful issue, the surviving son must heir all the property given by me to him." One son having died without making a will, or leaving lawful issue, the court held under the foregoing statute that the will devised a defeasible fee to each son, subject to a termination upon the conditions provided. This holding was subsequently approved in the case of *Johnson's Adm'r* v. *Citizens Bank of Richmond*, 83 Va. 63, 1

S. E. 705, where the same will was involved. The same ruling is followed in *Daniel et al.* v. *Lipscomb et al.*, 110 Va. 563, 66 S. E. 850, and in *Commonwealth* v. *Wellford*, 114 Va. 372, 76 S. E. 917, 44 L. R. A., N. S., 419.

It remains only to be said that the terms of the will are not obscure. They are plain and unambiguous. The intention of the testatrix is clear and distinct. There is no need to resort to the rules of the foreign law of the domicile of the testatrix, or to any surrounding facts and circumstances to discover the intention of the testatrix.

The decree of the circuit court is affirmed.

*Affirmed.*