## Richmond

### Jack F. Thomas, Individually

### v.

### Margaret P. Thomas, et. al.

September 9, 1982.

Record No. 800494.

Present: All of the Justices.

*W. Edward Meeks, III* (*Richard S. Pendleton*, on briefs), for appellant.

*Carroll P. Freeman* (*Martin, Taylor, Fralin, Freeman & Perrow,* on brief), for appellees.

No appearance for Jack F. Thomas, Executor and Trustee under the will of William Thomas Thomas, Sr., deceased, and Jack F. Thomas, Henry Gouyer, Jr., Robert E. Jennings, Trustees of Randolph Memorial Baptist Church.

CARRICO, C.J., delivered the opinion of the Court.

This case involves construction of the will of William Thomas Thomas, Sr., deceased (the testator). In issue are the provisions of Item Third, which read:

*Third:* I give, devise, and bequeath all my remaining estate, real and personal, to the Trustees hereinafter named, in trust, to hold, manage and dispose of the same as follows:

(a) To divide the net income from said property equally among my wife and my two sons, William Thomas Thomas, Jr., and J. F. Thomas, until the death of my wife, Lizzie Ford Thomas.

(b) Upon the death of my wife, Lizzie Ford Thomas, to divide the principal of said estate in kind equally between my two sons, William Thomas Thomas, Jr. and J. F. Thomas. I give full power and authority to said Trustees to do all things necessary or proper to make the said division and the distribution under this sub-section.

(c) The last two sub-sections shall be subject, however, to the conditions that should either of my sons die leaving issue, then such of said issue, as may be living during the period of the distribution of the income or at the time fixed for the distribution of the principal shall take *per stirpes* the same part of said income or of said principal as the deceased parent would have taken if living, and should either of my sons die without leaving issue, then the portion of the one so dying shall go to the surviving son.

The will, dated December 15, 1940, named the testator's sons, William Thomas Thomas, Jr. (William), and Jack F. Thomas (Jack) as executors and trustees.

The testator died April 18, 1945, survived by his widow and two sons. The widow died June 15, 1975, survived by the two sons.

William died childless on December 30, 1978, survived by his wife Margaret and his brother. By his will, William provided for payment of annual sums to his wife for life and devised the balance of his estate to Randolph Memorial Baptist Church of Madison Heights, Virginia.

At the time of William's death, his father's residuary estate had not yet been distributed. When a dispute arose between Jack and William's widow concerning division of the father's estate, Jack, in his capacity as executor and trustee, filed a bill of complaint praying the trial court to determine whether the estate had passed to the two sons upon their mother's death or to Jack alone upon William's decease without issue.

The trial court held that the provisions of subparagraph (c) of Item Third of the testator's will were ambiguous but that it was "the manifest intent of the testator . . . appearing from a reading of his entire will . . . to provide that each of his sons [should] become indefeasibly vested in and to one-half of the remainder of his estate upon the condition that each of them survive the testator's widow." Giving effect to this "manifest intent," the court ordered the surviving executor and trustee to distribute one-half the residuary estate to Jack and the other half to William's beneficiaries.

On appeal, Jack contends that Code § 55-13 controls disposition of this case. The section reads:

> Every limitation in any deed or will contingent upon the dying of any person without heirs, heirs of the body, issue, issue of the body, children, offspring or descendant, or other relative, shall be construed a limitation to take effect when such person shall die not having such heir, issue, child, offspring, descendant, or other relative, as the case may be, living at the time of his death, or born to him within ten months thereafter, unless the intention of such limitation be otherwise plainly declared on the face of the deed or will creating it.

Jack argues that once the trial court found the provisions of subparagraph (c) ambiguous, it should have applied this statutory rule to the exclusion of every other rule of construction in determining the testator's intention with respect to the die-without-issue clause of his will. This application, Jack maintains, would

have required the court to find it was the testator's intention that, upon the death of one of the sons without issue, the surviving son would take indefeasible title to the whole principal estate, whether this death occurred before or after the passing of the testator's wife. The testator could have avoided this result, Jack asserts, only by plainly declaring otherwise on the face of the will, as Code § 55-13 mandates.

We disagree with Jack. We do not believe Code § 55-13 preempts consideration of all other rules of will construction. Rather, we think the statutory rule is designed to complement other rules in the ascertainment of the true intention of the testator. In a case applying the predecessor of § 55-13, we said:

> The purpose of the statute is to effectuate the intention of the testator by rendering valid a limitation which would have been otherwise invalid as violative of the rule against perpetuities. Since [the effective date of the statute], words which had previously been construed to mean an indefinite failure of issue are now construed to mean a *definite* failure of issue, and limitations founded thereon are no longer void for remoteness.

*Daniel* v. *Lipscomb,* 110 Va. 563, 569, 66 S.E. 850, 852-53 (1910).

The statutory rule is based upon the proposition that a testator does not intend to create an invalid limitation, but intends instead to make the limitation effective at a time not violative of the rule against perpetuities. Hence, where a will contains a bare provision that a limitation shall take effect upon the death of a person without issue, the statute saves the limitation from a claim of remoteness by arbitrarily fixing the date of the person's death as the time for determining whether he dies without issue. But, under the statute, if a will declares plainly an intention that the limitation shall be effective at some later time, the intention will be given effect even though the declared time is impermissibly remote and results in the invalidation of the limitation.

By the same token, if a will displays the testator's intention that a die-without-issue limitation shall take effect earlier than the time fixed in the statute, thus avoiding a possible claim of remoteness, the statutory purpose is served and the intent should be given effect. In these circumstances, an express declaration of intent on

the face of the will is not necessary; it suffices if the intention to fix an earlier vesting date can be discerned from the application of conventional rules of construction. A contrary holding would permit use of Code § 55-13 to thwart, rather than effectuate, a testator's intention.

■ Here, although the trial court admitted extrinsic evidence concerning the circumstances surrounding the execution of the will, it found the testator's intent was manifest from a reading of the entire will. We agree with the trial court; indeed, we think it unnecessary to look beyond the four corners of Item Third of the will to discover the testator's "manifest intent."

The last clause of subsection (c) of Item Third states that if either of the testator's sons "die without leaving issue, then the portion of the one so dying shall go to the surviving son." Read in isolation, this clause may be ambiguous with respect to the operative date of the contingency. When, however, the clause is read in context with the whole of Item Third, any ambiguity disappears and the testator's intention emerges clearly. That intention, we believe, was to make the limitation in favor of the surviving son contingent upon the death of the other son *before* the death of the testator's wife.

In subparagraph (a) of Item Third, the testator provided for the distribution of income among his wife and two sons "until the death of [his] wife." In subsection (b), the testator specified that, "[u]pon the death of [his] wife," the principal of the residuary estate should be divided equally between the two sons. Then, in the first clause of subsection (c), the testator made provision for the distribution of income and principal to the issue of a deceased son; this provision was made with reference to two distinct time frames, the one continuing "during the period of the distribution of the income," meaning from the time of the death of the testator to the date of the death of his wife, and the other occurring "at the time fixed for the distribution of the principal," meaning upon the death of the testator's wife.

Only in the last clause of subparagraph (c), dealing with the death of a son without issue, did the testator fail to particularize the time frame within which the clause should operate. But, given the structure and content of the whole of Item Third, we believe the last clause of subparagraph (c) should be read to refer back to and incorporate the time frames specified in the first clause. Hence, if one of the sons should die without issue "during the

period of the distribution of the income," that is, after the testator's death but before his wife's demise, the surviving son would receive the deceased son's share of the income; then, "at the time fixed for the distribution of the principal," that is, upon the death of the testator's wife, the surviving son would receive the entire residuary estate. But, should both sons survive the testator's wife, the divestive effect of the last clause of subparagraph (c) would be rendered inoperative, and the two sons would share equally in the distribution of the residuary estate.

This is the way the trial court construed the testator's will. Jack argues, however, that our decisions in *Peoples Nat. Bank* v. *Crickenberger,* 159 Va. 264, 165 S.E. 412 (1932), and *Rinker* v. *Trout,* 171 Va. 327, 198 S.E. 913 (1938), demonstrate the error in the trial court's construction.

The testator in *Crickenberger* devised his estate to his wife for life and, upon her death, to a son, Warren. The testator provided further that if Warren should die without heirs, then the estate would go to the testator's surviving children or their heirs. The question presented was whether Warren could convey fee-simple title during his lifetime. Citing the statutory ancestor of Code § 55-13, we answered the question negatively, holding that Warren had a defeasible interest that could ripen into indefeasible title only if he died leaving "children surviving him." 159 Va. at 268, 165 S.E. at 413.

The testatrix in *Rinker* devised her residuary estate in equal shares to her two daughters, Mrs. Rinker and Mrs. Macatee, but provided that if Mrs. Rinker should die without issue, then her share would go to Mrs. Macatee's children. Applying the predecessor of Code § 55-13, we held that Mrs. Rinker took only a "defeasible fee . . . subject to be divested, at her death without issue . . . ." 171 Va. at 337, 198 S.E. at 917.

Unlike the present will, neither document in these other cases contained any language evidencing an intention that indefeasible title should vest earlier than the time fixed by Code § 55-13. Hence, both cases are inapposite.

We hold the trial court did not err in ruling that each of the testator's sons should "become indefeasibly vested in and to one-half of the remainder of his estate upon the condition that each of them survive the testator's widow." Accordingly, we affirm the decree directing distribution of one-half the testator's residuary es-

tate to Jack F. Thomas and one-half to the beneficiaries of the estate of William Thomas Thomas, Jr.

*Affirmed.*